THE STATE OF KANSAS, *Appellee*, v. JAY G. WALLER,
*Appellant*.

No. 18,778.

SYLLABUS· BY THE COURT.

1. "DESERTION ACT" — *Remedial in Purpose* — *Liberally Interpreted.* The Desertion Act ·(Laws 1911, ch. 163), which provides for the punishment of a husband who, without just cause, neglects or refuses to provide for the support and maintenance of his wife in destitute or necessitous circumstances, is not a mere poor law, and was not designed merely to redress the public grievance flowing from the conduct denounced. It was intended to supplement other means and remedies for enforcing the moral and social duty of a husband to support his wife, is remedial in purpose, although it provides for the infliction of a severe penalty, and is to be liberally interpreted to accomplish the legislative intention.

2. ———— *"In Destitute or Necessitous Circumstances" Defined.* The words "in destitute or necessitous circumstances" mean needing the necessaries of life, which cover not only primitive physical needs, things absolutely indispensable to human existence and decency, but those things also which are ·in fact necessary to the particular person left without support.

3. ———— *Question for Jury.* Should a wife having an estate of her own be neglected by her husband, the character and extent of her resources and their availability to meet her needs may be taken into consideration in determining whether or not she is in necessitous circumstances, the question in all cases being one of fact for the jury to determine under proper instructions from the court.

4. ————᾽ *Not Material Necessaries be Supplied by Wife's Own Efforts or Outside Help.* Whenever a husband, without just cause, neglects or refuses to provide for the support and maintenance of his wife, and thereby places her· in ῾such a situation that she stands in need of the necessaries of life, it is not material that they are supplied by her own labor or by sympathizing relatives, friends, or strangers, so that she does not in fact suffer from the privation. He is guilty if he leaves her in such circumstances that, without her own efforts or outside help, she would lack the necessaries of life.

5. ———— *Parent and Child.* The foregoing rules applicable to the relation of husband and wife also govern the relation of parent and child.

Appeal from McPherson district court; FRANK F. PRIGG, judge. Opinion filed November 8, 1913. Affirmed.

*David Ritchie,* of Salina, and *David P. Lindsay,* of McPherson, for the appellant.

*J. M. Grattan,* county attorney, and *Peter J. Galle,* of McPherson, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The defendant was convicted of nonsupport of his wife and child under section 1 of chapter 163 of the Laws of 1911, known as the "Desertion Act," which reads as follows:

"SECTION 1. That any husband who shall, without just cause, desert or neglect or refuse to provide for the support and maintenance of his wife in destitute or necessitous circumstances; or any parent who shall, without lawful excuse, desert or neglect or refuse to provide for the support and maintenance of his or her child or children under the age of sixteen years in destitute or necessitous circumstances, shall be guilty of a crime and, on conviction thereof, shall be punished by imprisonment in the Reformatory, or Penitentiary, at hard labor, not exceeding two years."

Succeeding sections of the act give the neglected wife or child the right to institute the proceeding and provide for temporary orders upon a defendant for support and maintenance pending his prosecution, for his release from custody before or at the trial, on plea of guilty, or after conviction, upon his securing by recognizance compliance with such order of support and maintenance as the court may make in lieu of the penalty prescribed in section 1, and for the payment of the wages of a convict to his wife and children in case of confinement in the penitentiary or reformatory.

The defendant and his wife were married in 1904 and resided in McPherson county. In 1905 he deserted her and a child which had been born to them, and has

not since provided for the support or maintenance of either his wife or child. When he disappeared he had some horses, which were appropriated through a proceeding for alimony. Of the money realized in this way the wife has saved $50, which, together with $50 more earned by working out, she has at interest. She answered a puzzle in a newspaper and received credit on a piano. Her father took one of the horses mentioned and gave her the piano. She has no other money or property and supports herself and child part of the time by working out. She makes her home with her parents and stays with them when not working out. When with them she assists her mother in the house work. Her parents live on a good farm in a well furnished house of eight rooms, one of which she occupies with her child. Her parents live well, and besides contributing to the support of her and her child share their comforts with her. The child attends school regularly. On the day the defendant was arrested he had a conversation with his wife in which he asked what she would take to settle the matter. She replied that she would take $2000. He said he could not get that much money. He did not offer to take her to any other place or ask her to go to any other place where he would support her.

The information charged nonsupport of the wife and of the child in June, 1912, and that each one was then in necessitous circumstances. At that time the defendant, who was a resident of Colorado, was in McPherson county for the purpose of attending the funeral of a relative. The facts narrated having been proved at the trial, a motion was made to discharge the defendant, which was overruled. The defendant then requested the court to instruct the jury as follows:

"The words 'in destitute or necessitous circumstances' as used in the statute defining the offence charged in this case, mean that the wife or child must be in a position of extreme poverty or destitution of

the means of living; that is to say, in pressing want, and unless you find and believe from the evidence, beyond a reasonable doubt, that the wife or child of the defendant in this case was in such situation within two years before the filing of the complaint, in this case, you can not convict but must acquit the defendant."

The request was denied and the jury were instructed as follows:

"6. The jury are instructed that the word 'necessitous' means needy—needing the necessaries of life; and if you find that the defendant, without just cause, did neglect to provide for the support of his wife and child, or either of them, and that at the time of any of said neglect within two years next prior to the 1st day of June, 1912, they were in necessitous circumstances, as herein defined, then the fact, if it be a fact found from the evidence that they were furnished the necessities of life by relatives, or that the wife aided in furnishing herself with the necessaries of life by her own physical labor away from her home, this would not change the liability of the defendant for neglecting to provide for said wife and child or either of them.

"7. The jury are instructed that the chief object of the law is to compel the husband, when able, to support his family; and if the husband separates from his wife, leaving her in destitute or necessitous circumstances, it is his duty to provide for her where she is left, unless some reason be shown why she should follow him elsewhere."

A verdict of guilty followed, upon which sentence was pronounced, and the defendant appeals.

The propriety of the judgment depends primarily upon the meaning of the phrase "in necessitous circumstances" translated from the statute to the information. The expression must be regarded as relative to the subject of the statute in which it is used. When the same or equivalent words are used in statutes relating to the poor they usually refer to the physical necessities of food, clothing, and shelter. When used in a statute relating to the marital portion to be taken from the succession of a deceased spouse, the fortune

The State v. Waller.

of the deceased and the habits of life which such fortune engendered in the family are taken into consideration, since property which would make a person in one con- dition of life wealthy would be inadequate to supply the legitimate wants of one differently situated. (*Du-puy v. Dupuy, Administrator, et al.*, 52 La. Ann. 869, 27 South. 287.) The obligation of a husband to support his wife, and children in her custody, is frequently enforced by awarding her alimony during the pendency of a suit for divorce. Such an award is limited to temporary needs, and the common statement is that the application therefor is made on the ground of necessity, so that the wife may not be either defenseless or destitute. Discussing this subject the New Jersey court of errors and appeals said:

"The necessity that is the criterion of validity is not mere physical necessity, but rather social and moral propriety, having regard to the situation of the parties and the fitness of things. Food, shelter and clothing are physical necessities. In an enlightened community the common education of a child is a moral and social necessity." (*Streitwolf v. Streitwolf*, 58 N. J. Eq. 570, 576, 43 Atl. 904.)

These illustrations are sufficient to indicate the range of meaning which the words in question take when employed in reference to different subjects.

The purpose of the desertion statute was stated by the trial court in instruction No. 6 in the language used by this court in the case of *The State v. Gillmore*, 88 Kan. 835, 129 Pac. 1123. It is concerned with the marital duty of a husband to support his family. It is perfectly well understood that this duty is not discharged except by support and maintenance in the moral and legal sense of those terms, having regard to the situation, mode of life, estate, and social rank and condition of the persons concerned. A man is not permitted to degrade his wife to the level of the brutes. Sustenance which barely meets animal needs, which

53—90 KAN.

does no more than relieve the pangs of hunger, cover nakedness, and afford shelter from the elements, is not support or maintenance. He is obliged to provide such a place of abode, such furniture, such articles of food, wearing apparel, and use, such medicines, medical attention and nursing, such means for the education of children, and such social protection and opportunity as comport with the health, comfort, welfare, and normal living of human beings according to present standards of civilization, considering his own means, earning capacity, and station in life. These notions are rooted in the common conscience of the people and are reflected by section 4 of the statute which gives the court authority to fix the amount which the defendant must pay to his wife according to his financial ability or earning power and according to the circumstances of the case.

The same notions animate the words "destitute" and "necessitous." As applied to the circumstances of a wife whose husband neglects or refuses, without just cause, to support and maintain her they mean the same thing. They mean needing the necessaries of life, and the necessaries of life cover not only primitive physical needs, things absolutely indispensable to human existence and decency, but those things also which are in fact necessary to the particular person having the right to demand support and maintenance. The law is not a mere poor law. It is a domestic-duty law, and was intended to cover the case of a woman who is left destitute according to any just and humane estimate of her situation, although in the eyes of paupers she might appear to be rich. It often occurs that a husband is impecunious, while his wife is possessed of ample means. It often occurs that they have equal fortunes. Should a wife having an estate of her own be neglected by her husband, the character and extent of her resources and their availability to meet her needs may be taken into consideration in determining

whether or not she is in'necessitous circumstances, the question in all cases being one of fact for the jury to determine under proper instructions from the court.

The duty of a husband to maintain his wife is independent of the means or want of means which she possesses and of her ability or want of ability to support herself and children. It is likewise independent of the native disposition to generosity on the part of relatives, friends, and even strangers, which may be confidently relied on to protect a neglected woman from suffering and want. If a husband fail to provide his wife with the necessaries of life, she is authorized to procure them on his credit, if she can. Civil remedies exist whereby support may be compelled. But the duty is too often evaded in such a way that these measures are wholly inefficient. In view of this fact the legislature undertook to provide a method and a sanction adequate to secure performance. The essence of the act is that a man shall not be allowed to shift the burden of supporting his wife and children upon others under no obligation to bear it, and possibly upon the state itself. Therefore whenever a husband, without just cause, neglects or refuses to provide for the support and maintenance of his wife and thereby places her in such a situation that she stands in need of the necessaries of life, it is not material that they are supplied by her own labor or by sympathizing relatives, friends, or strangers, so that she does not in fact suffer from the privation. He is guilty if he leaves her in such circumstances that, without her own efforts or outside help, she would lack the necessaries of life.

All that has been said concerning the relation of husband and wife applies, of course, to the relation of parent and child.

The defendant relies upon a number of decisions rendered by the supreme court of Georgia. That state has a statute making it a misdemeanor for a father to

abandon his child, leaving it in a dependent and destitute condition. In quashing an indictment which omitted the words "and destitute" the court expressed its idea of destitution as follows:

"So to leave a child dependent does not convey the idea of absolute destitution. The child may be cared for and comfortable and yet dependent on some charity; but left destitute, it has no protector, friend or other author of benevolent kindness feeding and clothing it." (*McDaniel, governor, v. Campbell,* 78 Ga. 188, 189.)

This definition has been adhered to in subsequent decisions rendered in supposed obedience to the rule that penal statutes must be strictly construed. Cases from other states may be found holding that an abandoned wife or child must actually be in extreme want or be a public burden before a conviction of the husband or parent can be sustained. On the other hand, it is held, under the desertion and nonsupport acts of various states, that it is immaterial that the neglected wife has means of her own (*Poole v. The People,* 24 Colo. 510, 52 Pac. 1025), and that a delinquent husband may be punished, although his wife by her own exertions or by the aid of friends avoids pauperism (*People v. Malsch,* 119 Mich. 112, 77 N. W. 638). There is no conflict between these two classes of cases. In one the statutes construed contemplated nothing but redress of the public grievance. In the other they were designed to aid civil remedies for the enforcement of the liability for support and maintenance. The Kansas statute is of the latter kind, as the provisions subsequent to section 1 clearly show. Its object is to insure the observance of a high moral and social duty. It is remedial in purpose, although it provides for the infliction of a severe penalty, and it must be liberally construed in order that the legislative intent may be accomplished.

From what has been said it is clear that the motion to discharge was not well founded; that the court was

right in submitting the cause to the jury; that the in-
struction asked was improper; and that the instruction
given correctly stated the law.

Therefore the judgment of the district court is af-
firmed.