# STATE v. BESS.

No. 2500.   Decided December 22, 1913 (137 Pac. 829).

1. PARENT AND CHILD—PROSECUTION FOR NONSUPPORT—DESTITUTION
   —SUFFICIENCY OF EVIDENCE.   Evidence, in a prosecution of a
   father for failure and refusal to support his minor children, in
   violation of Sess. Laws 1911, ch. 105, sec. 1, *held* to support a
   finding that such children were in destitute and necessitous cir-
   cumstances.   (Page 41.)

2. PARENT AND CHILD—PROSECUTION FOR NONSUPPORT—DEFENSE.   In
   a prosecution of a father for failure to support his minor chil-
   dren, in violation of Sess. Laws 1911, ch. 105, sec. 1, it was
   no defense that the destitution of the children was relieved by
   the charitable acts of third persons.   (Page 42.)

3. PARENT AND CHILD — PROSECUTION FOR NONSUPPORT — WILLFUL
   DERELICTION.   Where, in a prosecution of a father for failure
   to support his minor children, in violation of Sess. Laws 1911,
   ch. 105, sec. 1, the evidence conclusively showed that the custody
   of two boys had been awarded him by a divorce decree, and
   that the custody of the children concerning whom the com-
   plaint was made had been awarded to the mother, that he had
   nothing but his earnings, that the current and necessary ex-
   penses of himself and the two boys far exceeded his earnings,
   and that he did not remain idle when he could have obtained
   employment, or waste any part of his earnings, a verdict should
   have been directed in his favor; it being essential to sustain a
   conviction that he should have willfully neglected and refused,
   without just excuse, to provide for the children concerning
   whom complaint was made.   (Page 46.)

APPEAL from District Court, Third District; *Hon. F. C.
Loofbourow,* Judge.

Robert E. Bess was convicted of having willfully neg-
lected and refused to provide for the support of his minor
children.   He appeals.

REVERSED WITH DIRECTIONS TO DISMISS.

*S. P. Armstrong* and *A. E. Christensen* for appellant.

*A. R. Barnes,* Attorney-General, and *E. V. Higgins* and *Geo. C. Buckle,* Assistant Attorneys-General, for the State.

McCARTY, C. J.

The defendant was tried and convicted in the district court of Salt Lake County of the crime of having, on the 1st day of August, 1911, and continuously thereafter until the filing of the information (December 27, 1911), willfully neglected and refused, without just cause or excuse, to provide for the support and maintenance of Leona May Bess, aged thirteen years, Inez Bess, aged eight years, and Eva Bess, aged five years, he being then and there the father of said children, all of whom, it is alleged in the information, were in destitute and necessitous circumstances. The defendant was sentenced to imprisonment in the county jail for a term of three months. The information was filed and the action prosecuted under Sess. Laws 1911, ch. 105, section 1. The provisions of the act, so far as material to the determination of the question presented by this appeal, are as follows:

"Any person who shall without just excuse, desert or willfully neglect or refuse to provide for the support and maintenance of his or her minor child or children under the age of sixteen years, in destitute or necessitous circumstances, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not more than three hundred dollars, or by imprisonment in the county jail at hard labor for not more than six months, or by both such fine and imprisonment." The record shows that the complaining witness, Mrs. Bess, and defendant were married April 12, 1893, and that six children, four girls and two boys, the issue of the marriage, were born to them. In May, 1911, Mrs. Bess obtained an interlocutory decree of divorce from defendant, which was made final in November, 1911. By the decree of divorce Mrs. Bess was awarded forty dollars per month as alimony, and was given

the custody of the four girls, and the defendant was awarded the custody of the two boys, Robert Vernal and Clarence Edward. The defendant, at the conclusion of the state's case, moved for a directed verdict in his favor on the ground that the evidence failed to show the commission of the crime charged. The court overruled the motion. When the evidence was all in and both sides had rested, the defendant again requested the court to instruct the jury to return a verdict of not guilty. The refusal of the court to direct a verdict as requested by defendant is the principal error assigned, and involves the question of the sufficiency of the evidence to support the verdict returned by the jury and the judgment entered thereon.

It is conceded that when the divorce was granted Mrs. Bess got what little property there was, which consisted of a small amount of furniture, the value of which was about $100, and a piano; that since the granting of the interlocutory decree she has worked in a knitting factory, done sewing, and has at times been employed as a nurse; that during the time covered by the information her earnings were very small, and that the defendant during that period contributed five dollars only for the support of the children mentioned in the information. In fact it is in effect conceded that since the granting of the divorce it has been one continuous hard struggle for her to provide the commonest necessaries of life for herself and the three children named in the information. The evidence shows that Leona Bess, the child thirteen years of age, lived, a part of the time covered by the information, with a friend, a Mrs. Lenny. Mrs. Bess testified, and her evidence is not disputed:

"I had her at home about a month, but found I could not support them (the children) on the wages I could make, . . . and I had to let her go. She went to Mrs. Lenny's in August, before school started. . . . She was not dressed comfortably at all. She had no underwear until after January, 1912, nothing except some old things that I had patched up that had been given to me for them. . . .

Eva was with me during all the time. I furnished her with what she had. Did not have very much. She was not dressed as well as she is now [in the courtroom]. What she has got has been given to her. People gave me old things to make over. . . . Sometimes we went quite hungry. . . . There are times my children have been suffering."

The defendant testified, and his evidence is not disputed, that four months of the time covered by the information he and his son Vernal boarded at the home of a Mr. Barrett for which he agreed to give Barrett thirty dollars per month; that during a portion of this time he worked for Barrett and earned $113; that Barrett paid him fifty-six dollars of his wages in money, and applied the balance in part payment of the amount due for his board; that in addition to the fifty-six dollars paid to him by Barrett he earned and received twenty-five dollars from other parties, a portion of which (how much does not appear) he paid for board, making eighty-one dollars in money that he received for wages during the time covered by the information; that from these wages he paid thirty dollars for medicines furnished and medical services rendered his son Clarence, paid sixteen dollars for clothes for Vernal, and paid ten dollars for clothes for himself, leaving a balance of twenty-five dollars, a part of which, as above stated, was paid for board. On cross-examination he was asked the following question: "What did you do with this additional twenty-five dollars?" He answered: "Why some of it went to pay for the clothes, and some I paid for board." It is conceded that the defendant has no property of any kind other than his personal effects, and no income whatever except his daily wages.

The foregoing are, in substance, the facts of this case as established by the evidence.

It is contended on behalf of defendant that the evidence is insufficient to support a finding by the jury that the children named in the information were in *"destitute and necessitious circumstances* as contemplated by the statute," and that it wholly fails to show that the defendant without "just excuse" willfully neglected and refused to

support or to contribute to the support of the children during the time covered by the information. We think there is sufficient evidence to sustain a finding that the children were in destitute and necessitous circumstances. The fact that the destitution and suffering of the children were relieved by the acts of kind and charitable friends does not, as counsel seem to contend, exculpate the defendant for his dereliction, if he were willfully derelict in failing to relieve the wants and suffering of the children by providing them with the common necessaries of life.

Counsel for defendant, in support of their contention, cite and rely upon the following decisions from states having statutes similar to the one under which the defendant was prosecuted: *Baldwin v. State,* 118 Ga. 328, 45 S. E. 399; *Williams v. State,* 126 Ga. 637, 55 S. E. 480; *State v. Thornton,* 232 Mo. 298, 134 S. W. 519, 32 L. R. A. (N. S.) 841. These cases seem to support the contention made in behalf of defendant "that when children are provided for by either parent, even though able to so provide only by the grace or good offices of relatives, the other parent commits no offense under the statute by refusal or neglect to contribute to their support; that is, the children, when so provided for, are not in destitute or necessitous circumstances." There are, however, well-considered cases which, under desertion and nonsupport statutes, hold that it is a violation of such statute for a husband and parent to willfully neglect or refuse to provide for the support of his wife and dependent minor children, regardless of whether they are supported and kept from actual destitution and want by the labor of the wife or by the charity of kind and generous friends or relatives. *Poole v. People,* 24 Colo. 510, 52 Pac. 1025, 65 Am. St. Rep. 245; *People v. Malsch,* 119 Mich. 112, 77 N. W. 638, 75 Am. St. Rep. 381; *State v. Witham,* 70 Wis. 473, 35 N. W. 934; *Burton v. Commonwealth,* 109 Va. 800, 63 S. E. 464; *State v. Waller,* 90 Kan. 829, 136 Pac. 215.) The object of the statute is to compel a parent to provide for the support and maintenance of his or her dependent

minor children. To give the statute the construction contended for by defendant would, in most cases where the husband is prosecuted under the statute, enable him to excuse his delinquencies in willfully failing to provide for the support and maintenance of his family. He would be permitted to show, if such were the fact, that his neglected wife by her own labor and exertions had provided and was continuing to provide herself and the children with the common necessities of life; and he might also show that sympathetic and generous relatives or friends, or some charitable institution, had furnished, and were continuing to furnish them with shelter, food, and clothing, thereby preventing actual physical suffering on their part. Therefore the effect of the statute, in so far as it is designed to aid in the enforcement of the continuing liability of the husband to provide for the support of his family, would, in the majority of cases, be counteracted by thus permitting him to use as a shield the motherly love and devotion of his neglected wife for her children and the hardships and privations endured by her for their sake—hardships caused in many cases by the husband's moral and legal wrong in willfully neglecting and refusing to support and provide for his family—and to interpose as a defense the fact, if it should be a fact, that his children are being properly supported and cared for by charity bestowed upon them by relatives, friends, and charitable institutions. In other words, we would have this anomaly: A defendant, whose family, because of his violation of a penal statute, is being sheltered, fed, and clothed by sympathetic friends or charitable institutions, interposing this same charity as a shield to protect himself from the penalties which the law imposes for the violation of the statute under which he is prosecuted. Such is not the intent or spirit of the law. To so hold would be to make a farce of the law and a mockery of justice.

In *State v. Waller, supra,* the court, in construing a statute which is almost identically the same as ours, among other things, said:

"The duty of a husband to maintain his wife is . . . independent of the native disposition to generosity on the part of relatives, friends, and even strangers, which may be confidently relied on to protect a neglected woman from suffering and want. If a husband fail to provide his wife with the necessaries of life, she is authorized to procure them on his credit, if she can. Civil remedies exist whereby support may be compelled. But the duty is too often evaded in such a way that these measures are wholly inefficient. In view of this fact the legislature undertook to provide a method and a sanction adequate to secure performance. The essence of the act is that a man shall not be allowed to shift the burden of supporting his wife and children upon others under no obligation to bear it, and possibly upon the state itself. Therefore, whenever a husband, without just cause, neglects or refuses to provide for the support and maintenance of his wife, and thereby places her in such a situation that she stands in need of the necessaries of life, it is not material that they are supplied by her own labor or by sympathizing friends, relatives, or strangers, so that she does not in fact suffer from the privation. He is guilty if he leaves her in such circumstances that, without her own efforts or outside help, she would lack the necessaries of life."

The court also observed:

"A man is not permitted to degrade his wife to the level of the brutes. Sustenance which barely meets animal needs, which does no more than relieve the pangs of hunger, cover nakedness, and afford shelter from the elements, is not support or maintenance. He is obliged to provide such a place of abode, such furniture, such articles of food, wearing apparel, and use, such medicines, medical attention, and nursing, such means for the education of children, and such social protection and opportunity as comport with health, comfort, welfare, and normal living of human beings according to present standards of civilization, considering his own means, earning capacity, and station in life."

We have copied somewhat extensively from the Kansas case because the views therein expressed accord with our own notions regarding the intent and scope of the statute under consideration. But, even under the construction of the statute as contended for by defendant, the children here involved were in destitute circumstances. The undisputed evidence shows that the children actually suffered because they were not supplied with the common necessaries of life.

We are of the opinion, however, that the evidence fails to show such willful dereliction on the part of the defendant in failing to provide for the support and maintenance

of the children as would make him amenable to the     **3**
penal statute under which he was prosecuted. It will
be noticed that the undisputed evidence shows that during
the time covered by the information the current and neces-
sary expenses of the defendant and the two boys, whose cus-
tody was awarded to him by the decree, far exceeded his earn-
ings. It is not contended, or even suggested, that defendant,
during the time mentioned, willfully or otherwise remained
idle when he could have obtained employment; nor is it
contended or suggested that he spent or wasted any part of
the money earned by him in dissipation or riotous living. In
fact the evidence affirmatively shows that defendant
is not addicted to the use of tobacco or spirituous
liquors, and does not gamble. We think the ev-
idence wholly fails to show willful neglect on his
part as contemplated by the statute to provide for
and support the children mentioned in the information.
True, evidence was introduced showing that he failed to con-
tribute anything for their support; but the evidence also
shows that the current and necessary expenses of himself
and two boys far exceeded his earnings during the time cov-
ered by the information, hence his neglect in that regard was
not without "just excuse." Moreover, the record shows that
on different occasions immediately preceding the time cov-
ered by the information Mrs. Bess had the defendant cited
into court to show cause why he should not be adjudged
guilty of contempt because of his failure to pay alimony as
provided in the decree of divorce. It seems that on each oc-
casion the defendant was discharged by the court. It does
not appear, however, whether on those occasions the defend-
ant procured his discharge by paying alimony or by satis-
fying the court that, because of circumstances for which he
was not responsible, he was unable to do so. The evidence for
the state does show that after the filing of the information,
and about six weeks before the cause came on for trial, the
defendant, by order of the court, paid Mrs. Bess ten dollars.
It is therefore apparent that supplementary proceedings un-
der the decree of divorce are much more effective in securing

to Mrs. Bess and the children their legal rights than is the prosecution of the defendant in a criminal action. In supplementary proceedings the element of "destitute and necessitous circumstances" on the part of the children, and of "willful neglect" without "just excuse" on the part of the defendant to provide for their support and maintenance, is not essential in order to authorize the court to compel him to pay the alimony awarded by the decree, whereas in criminal proceedings it must be established by the evidence beyond a reasonable doubt that the children were in destitute and necessitous circumstances, and that the defendant without just excuse willfully neglected and refused to provide for their support and maintenance, before the defendant can be legally convicted. The defendant's request for a directed verdict in his favor should have been granted.

We think the record clearly shows that the defendant cannot, under any theory of the case, be legally convicted of the crime charged in the information. The judgment is therefore reversed, with directions to the trial court to dismiss the action.

STRAUP, J.

I concur. Yet I do not think the defendant has done all he ought to have or could have done to support his children. Many a man would go hungry himself before he would let his children go hungry, or before he would cast the burden of their support on the labors of his wife, divorced from him or not. But I cannot penally punish a man who does not take that view of the matter, and who, unwilling to share his earnings, selfishly appropriates them to his own need and want, as here did the defendant. Of course the home was disrupted, the husband granted the custody of two children, the wife four, and awarded forty dollars per month "permanent alimony." No other order was made requiring him to support or to contribute to the support of the children awarded to the wife; neither was there one relieving him from such duty or obligation. It may be assumed the court expected that the moneys ordered paid to the wife would be applied

by her both to her support and that of the children awarded to her. At first the defendant made partial payments of alimony, and then ceased paying anything. There is no doubt that the wife and children awarded to her were in destitute circumstances. As testified to by her, demands were made on the defendant, which were answered by refusals and statements that he would pay no more alimony "until he got good and ready." She had him ruled in on orders to show cause. On one occasion she procured an order of arrest, but service of it, as testified to by her, was avoided by concealing himself. He himself testified that he forbade one of his employers paying one-half of his wages to his wife in response to an inquiry from his employer whether he should do so, stating, "I am paying my own bills." The time alleged in which he had willfully failed to support his children covered a period from August to December. During that time he did not pay anything to his wife, and contributed nothing to the support of the children awarded her. He also testified that covering that period he was employed about half of the time, and earned $113. One of the children awarded to him was kept by his sister. He contributed $30 towards its support for medical attention; nothing for board or care. The other child awarded to him was most of the time kept and maintained by him. Some of the time that child was with relatives. He testified it took all of the $113 to pay his own board, clothes, shoes, hats, and shirts for himself, clothes for the two children and board for one of them; and that he still was indebted for board for himself and for both children. And then, I do not think he has satisfactorily explained why he was idle one-half of the time. He further testified that the custody of the children was the principal controversy in the divorce proceeding, and that "his folks" then, and at the time of this trial, were willing to take and were able to care for the children awarded to his wife, and that he desired his folks to have the children, but his wife was unwilling to surrender them. And there is the nub of this controversy; his unwillingness that she have the custody of the children awarded to her by the court. I do not think he has

made reasonable efforts to comply with the decree and pay the moneys required by him to be paid by it. I think he somewhat willfully disobeyed it and stood in defiance of it.

Now, where ought the rights and obligations with respect to such matters be vindicated and compliance with them enforced? Not through the criminal, but the civil, procedure. The latter is speedy and effective, and better than the criminal adapted to vindicate such rights and obligations, and to compel the defendant's obedience to and compliance with them. I, therefore, concur in the reversal of the judgment.

FRICK, J.

I concur. As pointed out by the Chief Justice, the marital relations theretofore existing between Mr. and Mrs. Bess had been legally dissolved for some time prior to the filing of the complaint in this case, and the six children, four girls and two boys, had been separated, the mother being awarded the girls while the father was given the care and custody of the boys, one of whom was sickly. The first duty of the father, therefore, was to provide maintenance for the boys, since he was especially charged by the divorce court with their care. If, however, he had ability to earn money, or had other means, the law still required him to provide maintenance for the girls, notwithstanding the fact that their custody had bee been awarded to the mother. But, as is said by the Chief Justice, Mr. Bess, in his struggle to obtain the means of support, could hardly obtain sufficient for the two boys and himself, and was utterly unable to provide means for the mother or the girls. In view of this, it would be a somewhat peculiar administration of the law in question, to say the least, if it should be held that Mr. Bess should be punished for what he was utterly unable to prevent. Moreover, to imprison him could result only in depriving the little boys of their means of support. Such a result would be more or less tragic for them, to say the least. Would either the county, the state, or anyone else, not excluding the mother and the four girls, be benefited by his imprisonment, and thus make the little boys

44 Utah—4

also objects of charity, as it is contended is the case with the little girls? I think not. While the law in question is salutary, it nevertheless is of that character which requires it to be administered with some care so as to not produce more mischief by it enforcement in certain cases than can be prevented thereby. The law only punishes for a willful neglect of duty imposed by it, and the evidence is wholly insufficient to sustain a finding to that effect. I thoroughly agree with the comments of the Chief Justice relative to the duty of a parent to provide for his children, but where it appears, as it does in this case, that the parent is unable to discharge such duty, it would be a travesty of justice to punish him.