# STATE v. OLIVER GARRISON.[1]

## May 21, 1915.

## Nos. 19,224—(11).

**Failure to provide food for infants.**
> Evidence considered and *held* not to sustain the conviction of defendant on a charge of wilfully and without legal excuse failing to furnish food, shelter or clothing to his minor children.

Defendant was prosecuted in the municipal court of St. Paul for failing to furnish food, clothing and shelter to his wife and their two minor children. He was tried before Boerner. J., who found him guilty and sentenced him to 30 days in the workhouse. From the judgment and order denying a new trial, defendant appealed. Reversed.

*E. S. Thompson,* for appellant.

*Lyndon A. Smith,* Attorney General, *O. H. O'Neill* and *T. W. McMeekin,* for respondent.

BUNN, J.

Defendant was tried under the complaint of his wife charging that he wilfully and without lawful excuse failed to furnish food, clothing and shelter to herself and their two minor children. He was found guilty by the trial court of wilfully and without lawful excuse failing to support the children and appealed from an order refusing a new trial.

We have very carefully considered the evidence, and reach the conclusion that it does not justify the conviction. This is a criminal case, and the evidence to warrant a finding of guilty should be sufficient to satisfy the trial court beyond a reasonable doubt not only that the defendant failed to furnish needed support, but that such failure was wilful and without legal excuse. G. S. 1913, § 8667.

[1] Reported in 152 N. W. 762.

Defendant and the complaining witness had been married three years and were living .in a house owned by the defendant in Hamline. In March, 1913, defendant went to California, whether to obtain work, to regain his health or to escape ties that had become irksome, is perhaps uncertain and is not very material. He had been in business with his father and sold out his interest. Of the proceeds, after paying bills, he took $250 with him, and left the balance of $1,000 with his father with directions to pay his wife $50 a month until the money was all used. This also appears to have been the agreement between the defendant and his wife. Defendant arranged with a grocer to furnish supplies to his wife on his credit. It was further agreed between the husband and the wife at this time, that the latter should sell the house, which was in defendant's name and had been bought with his money, and should send the proceeds above the mortgage to defendant. A few weeks after arriving in California, defendant suffered a nervous breakdown, and underwent an operation for appendicitis. He was in a hospital for several months and subject to an expense of some $2,000 for doctors' and nurses' and hospital bills. He was able to do no work nor to earn anything from this time to the time of the trial. His condition was testified to by himself and a physician and members of his family and there is nothing whatever to contradict their evidence.

The wife, with her children, one of whom was born after the defendant left, occupied the house until February, 1914, when it was sold. The price was $3,200, or $1,400 above the mortgage, which the purchaser assumed. Four hundred dollars was paid to the wife in cash and the balance of $1,000 was to be paid her in monthly instalments of $20 each. Defendant had before this time sent his wife a deed executed by him with the name of the purchaser and the consideration left in blank, expecting that his wife would send him the sale proceeds, as she had stated and written him she would do. She sent him nothing, and, either in reprisal for breach of her agreement or for reasons not disclosed, defendant instructed his father to stop the $50 per month payments, of which 12 had been made. The testimony of defendant is that this $400 remaining of the money he had left with his father was used, together with more furnished by

the father, in paying the expenses of defendant's illness in California. After the house was sold, the wife and children, with the wife's mother, moved into a flat. In June they took apartments at the Piedmont, where they paid $40 per month for their rooms. The mother furnished a good part of the money for the support of the wife and the children, though Mrs. Garrison had the $20 per month, and what was left of the cash received from the sale of the house after paying a commission, taxes and certain bills. She also received something from the sale of part of defendant's furniture and from the rent of a room.

Defendant returned from California in August, 1914, and did not see his children until the trial of this case. There was manifestly very bad feeling between him and his wife. But what are the merits of the case as between them is quite unimportant on the question of defendant's duty to support his children. This was clearly his duty, and, conceding that they were in need of his support, the only defense to this prosecution is his inability to perform this duty. That such inability caused by illness is a legal excuse for the failure to furnish support to a wife or children is not open to doubt. It is entirely clear that there was this legal excuse, unless defendant is to be punished in this proceeding for stopping the $50 payments to his wife. If he still had this money or the power to direct its payment, it could well be said that he would have no legal excuse for not using it in caring for his wife and children. The trouble with the case is that the evidence utterly fails to show this. There is no suggestion that defendant had this $400 or any part of it, or that his father has it for him. On the contrary, the uncontradicted testimony shows that both before and since his return from California defendant has been dependent on his father for his own support.

We think that the interests of justice demand a new trial. Defendant may then have recovered his health, or the rights and duties of the parties may have been adjudicated in the divorce action which has been begun.

Order reversed and new trial granted.