[Criminal No. 672.  Filed January 16, 1928.]

[263 Pac. 1.]

J. W. BRANHAM, Appellant, v. STATE, Respondent.

Mr. John A. McGuire, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. Frank J. Duffy, Assistant Attorney General, for the State.

ROSS, C. J.—On May 17th, 1927, defendant was convicted of violating section 249 of the Penal Code of 1913, reading as follows:

"A parent who willfully omits, without lawful excuse, to furnish necessary food, clothing, shelter or

medical attendance for his or her minor child is guilty of a felony.''

The information was in effect and substance couched in the language of the statute, the dereliction charged being the wilful omission, without legal excuse, on or about January 15th, 1927, to furnish necessary food, clothing, shelter, and medical attendance for his minor children Marietta, Albert and Nellie Louise Branham.

The defendant has appealed from the judgment of conviction and urges that many errors were committed. One of defendant's contentions is that section 249 is unconstitutional and void for uncertainty. The infirmity of the statute, he says, consists in its leaving it to the judge and jury to determine what is or what is not lawful excuse. In other words, he thinks the statute should enumerate and define the permissible defenses to this charge and not leave it as a matter of construction by the courts.

The point made is certainly novel and not without interest. The feature of the statute questioned is identical with the New York, California, and Oklahoma statutes, and, although numerous prosecutions have been had in these jurisdictions under such statutes, the question now raised has either been overlooked or thought untenable. *People* v. *Pierson,* 176 N. Y. 201, 98 Am. St. Rep. 666, 63 L. R. A. 187, 68 N. E. 243; *Washington* v. *State,* 22 Okl. Cr. 69, 209 Pac. 967; § 270, Kerr's Penal Code of California 1920, and annotations.

Because it may be difficult at times to determine what constitutes a lawful excuse for a parent who fails to furnish the enumerated necessaries to his children is not sufficient reason to declare the statute void for uncertainty. In Lewis' Sutherland, Statutory Crimes, § 86, the rule is stated thus:

"A statute cannot be held void for uncertainty, if any reasonable and practical construction can be given to its language. Mere difficulty in ascertaining its meaning or the fact that it is susceptible of different interpretations will not render it nugatory. Doubts as to its proper construction will not justify us in disregarding it. It is the bounden duty of courts to endeavor by every rule of construction to ascertain the meaning of, and to give full force and effect to, every enactment of the general assembly not obnoxious to constitutional prohibitions. But if, after exhausting every rule of construction, no sensible meaning can be given to the statute, or if it is so incomplete that it cannot be carried into effect, it must be pronounced inoperative and void."

Defendant contends the information charges three crimes against him, to wit, one for omitting to furnish the enumerated necessaries to Marietta, one for omitting to furnish same to Albert, and one for omitting to furnish same to Nellie Louise, and is therefore bad. He insists his demurrer should have been sustained on this ground. This point, too, is novel. We do not find where it has been raised before, although the form of information here used is quite common where there are more children than one. We think while the parents' duty is personal to each of his children, the duty owed is also to all of them as constituting the family unit. Usually, if not always, the same omission of duty affects all the children alike. They are injured by the same act or omission at the same time and manner, and when that is so the omission should be treated as one offense. The rule contended for by defendant would, indeed, in many cases be an extremely harsh one, as under it a derelict parent could be punished as many times as he has children.

The other objections to the information are without merit. It is substantially in the language of the statute, and, the offense being statutory, this is, as a

general rule, sufficient. *Atkin* v. *Territory,* 13 Ariz. 26, 108 Pac. 225; *Cluff* v. *State,* 16 Ariz. 179, 142 Pac. 644; *Thompson* v. *State,* 25 Ariz. 314, 216 Pac. 1074; *State* v. *Moran,* 99 Conn. 115, 121 Atl. 277, 36 A. L. R. 862, and note at page 866.

At the close of the state's case and the close of the whole case the defendant moved for a directed verdict upon the ground of failure of proof, and the ruling upon the motion brings into review the question as to whether under the evidence and the law the conviction should stand.

The submitted evidence that was not controverted is about as follows: The defendant and the prosecuting witness, Elma Branham, were husband and wife, having become such a number of years—just how many the record does not show—before this proceeding. There were born to them five children. In July, 1926, upon the complaint of the wife charging defendant with failure to support, she was granted a divorce, the custody of the children, and $50 a month alimony, the defendant making no resistance. For some time prior thereto, and at the time of the divorce, four of the children, to wit, Willie, Marietta, Albert and James Wesley, were living with and being cared for by defendant's mother, Mrs. C. Williams, in Prescott. Defendant's home was also with his mother. Nellie Louise, who was but seven months old at the time of the divorce, was kept by her mother. The four older children remained with the paternal grandmother, Willie until in October when he died, and Marietta and Albert until in November, 1926, and James Wesley continuously. Marietta, aged six, and Albert, aged four, were taken from the grandmother by their mother in November, and given over to a maternal uncle and his wife, living on the Verde in Yavapai county, where they were at the time of the trial, and, so far as the evidence shows were being well cared for. Nellie Louise, who was four-

teen months old at the time of the trial, was kept and supported during all the time by her mother. Marietta at the time she was taken from her grandmother was attending the public schools of Prescott.

The evidence as to the troubles between the parents, their poverty, and their struggles to care for and support their children, is not as full or complete or explicit as it might be, leaving much to conjecture or surmise. It appears that defendant is totally blind in one eye, due to the explosion of a dynamite cap, and is short three fingers on one of his hands. Otherwise he is able-bodied and capable of doing some kinds of common labor, but nothing else. During the months of June, July and August, 1926, he was, with a brother, engaged in cutting and marketing firewood in Prescott, and realized about $90 a month, which was used to support the home provided by his mother and where his children were living. He quit such work because it ceased to be remunerative, went to Phoenix in the latter part of August, worked on a ranch caring for and feeding stock for about three weeks, receiving therefor $3 a day and board, and out of such earnings remitted to his mother about $40 or $50. On account of Willie's illness he returned to Prescott, and from that time on until his arrest he was unable to get steady employment, although he tried time and again. He sought employment with the United Verde Copper Company, but was rejected on account of physical defects. He engaged in cutting wood for sale at Clarkdale, but could not find a market for it. He realized on this job only $20. He looked to other places for work, and finally was employed to go to work on February 8 or 9, 1927, but was prevented from accepting such employment because of his arrest in this case.

During this time the mother, Elma Branham, was engaged in running the Reif and Gem Hotels in Prescott, and she had also been employed as a chamber-

maid. She contributed from January to September, 1926, $111.32 to defendant's mother for keeping the children, and, as she says, her one-half from September to November, when she removed Albert and Marietta to her brother's home on the Verde, after which time she and the brother supported them. The defendant did not pay the $50 per month alimony except in the manner stated—some months paying more than $50 and some less for the care of his minor children.

The two children who were turned over to the mother's brother (the maternal uncle) in November were taken from the paternal grandmother against her protest and against the protest of the defendant. There was evidence that the charges of the physician for medical attendance upon Willie during his last illness had not been paid by defendant or anyone else, but there is no contention that the children did not have proper medical care. It is also easily deducible from the evidence that the home provided for Marietta and Albert by the grandmother was not ideal, she herself at the time, or part of the time, being a recipient of charity from the county, and, after her son's incarceration, forced to do laundry work. It does not appear, however, that the children were not furnished necessary food, shelter, clothing and medical attendance during all the time they were with the grandmother.

Section 249 makes it the duty of parents of children to care for them in the manner and to the extent therein provided. The duty is specified and enjoined by the provisions of the section.

"It is 'to furnish food, clothing, shelter, or medical attendance.' Giving the statute a reasonable construction by applying the rule of necessity, it is apparent that it means the necessary food, clothing, shelter or medical attendance required for the pres-

ervation of the health and life of the child.'' *People* v. *Pierson, supra.*

Before a parent may be punished as a felon for omitting to furnish necessaries to his child, it must appear that such omission was wilful and without lawful excuse. The element of intention is present if the omission is made purposely or willingly. Subd. 1, § 7, Pen. Code 1913. If the omission is not intentional or willing, but the result of conditions and circumstances over which the parent has no control, there is absent a very material ingredient of the crime defined in section 249. It is also apparent that it was intended by said statute to exempt a parent from criminal punishment even though under some circumstances the omission was willingly made. In other words, a wilful omission will excuse the parent if the excuse is a lawful one. An omission to furnish food, clothing, shelter or medical attendance to his child is never wilful if the parent, after an honest effort, in good faith, is unable to furnish them. If he is without property or means and is dependent upon what he may be able to earn, and the evidence shows a willingness on his part to work but inability to secure remunerative employment, or if he becomes sick and unable to work, or if afflicted with physical defects that prevent his obtaining work, a showing to that effect will, under all the decisions, excuse him for omitting and failing to furnish his child the enumerated necessaries. *People* v. *Forester,* 29 Cal. App. 460, 155 Pac. 1022; *State* v. *Garrison,* 129 Minn. 389, 152 N. W. 762; *Goddard* v. *State,* 73 Neb. 739, 103 N. W. 443; *State* v. *Bess,* 44 Utah 39, 137 Pac. 829.

The defense here is not only inability, but it is said that, the necessaries having been supplied, it makes no difference by whom, defendant was relieved of the duty and consequently of criminal responsibility. This contention is in accordance with the holdings of

the California courts under a statute from which ours was evidently taken. *People* v. *Clarke*, 51 Cal. App. 469, 201 Pac. 465; *People* v. *Wallach*, 62 Cal. App. 385, 217 Pac. 81; *Ex parte Kendrick*, 60 Cal. App. 146, 212 Pac. 226. However, in other states, under statutes having for their purpose the same general object, the courts have adopted the view that the duty imposed by the statute is personal and not excusable on the ground that other persons, through charity, kindness, or affection, may have supplied the necessaries to the child, and we think this is the sounder and better view. We concur in the reasons given, as a basis for the latter rule, in what was said in *State* v. *Bess, supra:*

"The object of the statute is to compel a parent to provide for the support and maintenance of his or her dependent minor children. To give the statute the construction contended for by defendant would, in most cases where the husband is prosecuted under the statute, enable him to excuse his delinquencies in wilfully failing to provide for the support and maintenance of his family. He would be permitted to show, if such were the fact, that his neglected wife by her own labor and exertions had provided and was continuing to provide herself and the children with the common necessities of life; and he might also show that sympathetic and generous relatives or friends, or some charitable institution, had furnished, and were continuing to furnish them with shelter, food, and clothing, thereby preventing actual physical suffering on their part. Therefore the effect of the statute, in so far as it is designed to aid in the enforcement of the continuing liability of the husband to provide for the support of his family, would, in the majority of cases, be counteracted by thus permitting him to use as a shield the motherly love and devotion of his neglected wife for her children and the hardships and privations endured by her for their sake—hardships caused in many cases by the husband's moral and legal wrong in wilfully neglecting and refusing to support and provide for his family— and to interpose as a defense the fact, if it should be

a fact, that his children are being properly supported and cared for by charity bestowed upon them by relatives, friends, and charitable institutions. In other words, we would have this anomaly: A defendant, whose family, because of his violation of a penal statute, is being sheltered, fed, and clothed by sympathetic friends or charitable institutions, interposing this same charity as a shield to protect himself from the penalties which the law imposes for the violation of the statute under which he is prosecuted. Such is not the intent or spirit of the law. To so hold would be to make a farce of the law and a mockery of justice.''

We think the *quantum* or standard of such duty is very well put in *State* v. *Waller,* 90 Kan. 829, 49 L. R. A. (N. S.) 588, 136 Pac. 215, as follows:

''He is obliged to provide such a place of abode, such furniture, such articles of food, wearing apparel, and use such medicines, medical attention and nursing, such means for the education of children, and such social protection and opportunity as comport with the health, comfort, welfare, and normal living of human beings according to present standards of civilization, considering his own means, earning capacity, and station in life.''

Having stated the rule of law that we conceive to be the proper and correct rule, we now revert to the evidence. It does not appear therefrom that defendant's children wanted in the common and ordinary necessaries of food or clothing, or that they were not comfortably and sanitarily housed, or furnished all needed medical attention, but it does appear that these things have not been supplied wholly by defendant. Some of them the mother furnished; it may be the greater part came from her. The baby, Nellie Louise, was entirely taken care of by her mother. The other four children, before the divorce and afterwards, lived with defendant and his mother, and, although the decree of divorce gave their custody to their mother, no change was made. James Wesley,

we judge from the record, was still with the grandmother at the time of the trial.

The defendant's statement of his contributions toward the support of his children is uncontradicted, and if true they were substantial, considering his condition and circumstances. His story as to the efforts he made to secure employment is not only undisputed, but abundantly corroborated. Upon a citation to show cause why he should not be punished for failure to pay monthly alimony his inability to do so would have been a lawful excuse. *In re McCandless,* 17 Cal. App. 222, 119 Pac. 199. In this case it was said:

"While it is the duty of a parent to support children of tender years, that he be imprisoned on account of the failure to obey an order of the court in connection therewith, it must affirmatively appear that he has the ability to comply with the order of the court."

If the showing made would be a defense in such a proceeding, it would seem it should be sufficient in a criminal prosecution such as this. It was not shown that defendant wasted or foolishly spent his earnings. So far as the record shows, his habits are good. There is no intimation that he is addicted to strong drink, or that he gambles, or that his associates were evil. We are impressed with the force of what Mr. Justice FRICK said in a concurring opinion in the Bess case, *supra:*

"In view of this, it would be a somewhat peculiar administration of the law in question, to say the least, if it should be held that Mr. Bess should be punished for what he was utterly unable to prevent. Moreover, to imprison him could result only in depriving the little boys of their means of support. Such a result would be more or less tragic for them, to say the least. . . . While the law in question is salutary, it nevertheless is of that character which requires it to be administered with some care so as to not pro-

duce more mischief by its enforcement in certain cases than can be prevented thereby.''

We think the state failed to make out its case. According to the record, defendant did not wilfully omit, without lawful excuse, to furnish the enumerated necessaries to his children, but furnished such necessaries to the extent of his ability.

The motion for an instructed verdict should have been granted.

The judgment is reversed and the cause remanded, with directions that the judgment of conviction be vacated and defendant discharged from custody.

LOCKWOOD and McALISTER, JJ., concur.