[No. 39071.    En Banc.    May 29, 1968.]

THE STATE OF WASHINGTON, *Respondent,* v. WAYNE RUSSELL, *Appellant.*\*

\*Reported in 442 P.2d 988.

*Lauren W. Dobbs*, for appellant.

*Lincoln E. Shropshire* and *Donald R. Shaw*, for respondent.

HAMILTON, J.—On February 18, 1963, appellant, Wayne Russell, was charged by information in Yakima County with the crime of nonsupport of his seven minor children, all then under the age of 16 years.

In March, 1963, appellant entered a plea of not guilty to the charge, waived trial by jury, and was convicted following trial before the court on March 25, 1964. The trial court thereupon entered a judgment and an order suspending sentence. By the terms of this judgment, appellant was placed on probation for a period of 5 years and required to make certain support payments. On December 9, 1964, a petition was filed by the prosecuting attorney alleging that appellant had failed to comply with the support provisions. The prosecuting attorney asked that sentence be imposed. A hearing was commenced upon this petition. At this hearing, appellant, represented by new counsel, interposed a motion to vacate the original judgment of guilt upon the grounds that he and the mother of his seven children were never married. He accused his former attorney of know-

ingly failing to assert the lack of a marriage ceremony as a defense during his trial. After further hearings, at which appellant's original counsel testified, the trial court denied appellant's motion to vacate the judgment of guilt, imposed sentence, and suspended execution thereof subject to appellant serving 4½ months in the county jail and paying $175 per month for his children's support. On appeal from this judgment, this court remanded the cause to the trial court for entry of findings of fact and conclusions of law as required by RCW 4.44.050 and Rule of Pleading, Practice and Procedure 52.04W (now CR 52(a)(1), RCW vol. 0). *State v. Russell*, 68 Wn.2d 748, 415 P.2d 503 (1966).

On July 19, 1966, with appellant appearing by still different counsel, the trial court entered the following pertinent findings of fact and conclusions of law:

FINDINGS OF FACT

1. Defendant, Wayne Russell, married Phyllis Russell in Seattle in 1948 and they continued living together for the next fourteen years as man and wife and held themselves out as man and wife.

2. In March, 1962, Phyllis Russell commenced divorce proceedings in Yakima County, Washington, against defendant, Wayne Russell, but no final decree of divorce has ever been granted in said action.

3. As a result of said marriage and relationship the following children were born to Wayne Russell and Phyllis Russell: Linda, born 1948; Gary, born 1949; Gayle, born 1951; Roger, born 1954; Mark, born 1956; Kathy, born 1957; and David, born 1962.

.   .   .   .

6. Between July 15, 1962, and February 18, 1963, the defendant, Wayne Russell, was gainfully employed in the trucking business at an approximate rate of three dollars per hour. That during this time defendant was not steadily employed and earned a minimum of $1,900, which would average a minimum of $271 per month.

7. Defendant had the physical and financial ability to more adequately support his seven minor children during the period of time between July 15, 1962, and February 18, 1963, but failed to do so.

8. During the period that non-support has been charged the court finds the defendant made support pay-

ments through the office of the prosecuting attorney of Yakima County of an average of $50.00 per month for a total of $360.00.

9. Defendant's seven minor children could not live on seven dollars per month per child and this amount was grossly inadequate to purchase necessary food, clothing, shelter and medical attention.

10. Between July 15, 1962, and February 18, 1963, Phyllis Russell and defendant's seven minor children were separated from the defendant and received A.D.C. (Aid to Dependent Children) funds from the State of Washington in an amount of two hundred eighty-six dollars per month for necessary food, clothing, shelter and medical attention.

11. . . . .

The motion to vacate the purported judgment alleged that the defendant and Phyllis Russell had never in fact been married in any ceremonial marriage. That this alleged fact had been made known to the then counsel for the defendant, and that the defendant, himself, had no appreciation of the fact that a lack of such marriage would affect his case.

The motion to vacate in effect charged the original attorney for defendant with malpractice, and a failure to properly present the defendant's case, causing a miscarriage of justice and depriving the defendant of a defense to which he was entitled.

The court finds that the testimony at this second hearing respecting the lack of such marriage was most unconvincing and finds that the attorney did not receive any information casting doubt upon the marriage status of the defendant and that he used all reasonable skill and care in the presentation of the defendant's case.

The court finds that the allegations in support of the motion to vacate the judgment are not supported by the testimony.

## Conclusions of Law

1. Wayne Russell and Phyllis Russell were married in Seattle, Washington, in 1948 and lived together as man and wife for the next fourteen years.

2. Seven minor children under the age of 16 years were born of this union: . . . .

. . . .

4. That, between July 15, 1962, and February 18, 1963, defendant, Wayne Russell, willfully, unlawfully and feloniously, and without lawful excuse, did omit to furnish necessary food, clothing, shelter and medical attendance to his seven children.

5. Defendant is guilty of the crime of non support of minor children under the age of 16 years.

Sentence was again imposed and suspended conditioned upon appellant serving 4½ months in the county jail and meeting specified support money requirements. This appeal followed.

Appellant makes four assignments of error, which by argument he resolves into two contentions.

By his first contention appellant asserts that the evidence adduced at his trial is insufficient to support findings of fact Nos. 6 and 7 and conclusions of law Nos. 4 and 5, set out above. We cannot agree with this contention.

RCW 26.20.030 provides in pertinent part:

(1)  Every person who:

. . . .

(b)  Wilfully omits, without lawful excuse, to furnish necessary food, clothing, shelter, or medical attendance for his or her child or children or ward or wards; or

. . . .

(2)  When children are involved under the age of sixteen years, such act shall be a felony  . . . .

Supplementary to this definition of the crime of nonsupport, RCW 26.20.080 provides:

Proof of the  . . .  omission to furnish necessary food, clothing, shelter, or medical attendance for a child or children, ward or wards, is prima facie evidence that such abandonment or nonsupport, or omission to furnish food, clothing, shelter, or medical attendance is wilful.

We pause to observe that the word "wilful," when used in criminal statutes with respect to proscribed conduct, generally speaking, relates to an act or omission done intentionally, deliberately, and/or designedly, as distinguished from an act or omission done accidentally, inadvertently, or innocently. *State v. Bixby,* 27 Wn.2d 144, 177 P.2d 689 (1947); *State v. James,* 36 Wn.2d 882, 221 P.2d 482

(1950); *State v. Spino*, 61 Wn.2d 246, 377 P.2d 868 (1963). When used in criminal statutes making nonsupport a penal offense, a willful act or omission thus comprehends and imports an absence of lawful excuse or justification on the part of the accused parent. *Ex Parte Strong*, 95 Tex. Crim. 250, 252 S.W. 767 (1923); *Branham v. State*, 33 Ariz. 170, 263 Pac. 1 (1928); *State v. Hinson*, 209 N.C. 187, 183 S.E. 397 (1936); *State v. McMains*, 95 Okla. Crim. 176, 241 P.2d 976 (1952); *Bohannon v. State*, 271 P.2d 739 (Okla. Crim. 1954).

■ Although the state has the burden of establishing willfulness as well as the absence of lawful excuse in a prosecution for the omission proscribed by RCW 26.20.030(1)(b), *supra*, it meets that burden on a prima facie basis under the provisions of RCW 26.20.080, *supra*, when the evidence it presents reveals, directly or circumstantially, a failure on the part of a physically or vocationally able parent to furnish the requisites of support. The prima facie case so established, or the presumption to which RCW 26.20.080, *supra*, gives rise, is, of course, a rebuttable one. *State v. Tucker*, 151 Wash. 218, 275 Pac. 558 (1929). Thus, to meet and possibly defeat the prima facie case, the accused parent may show a lawful excuse, including a physical, vocational or economic incapacity to furnish the elements of support delineated by RCW 26.20.030. Absent a conclusive rebuttal showing of a lawful excuse, the issues so raised present factual issues for determination by the trier of the facts, as does the prima facie case absent any rebuttal by the accused.

In the instant case, the evidence adduced by the state indicated that appellant and Phyllis Russell had been married for some 14 years, during the course of which union seven children were born. The testimony further revealed that appellant and his wife separated in the early part of 1962, at which time a divorce action was initiated and appellant left the city of Yakima, where the children and his wife resided, and went to Seattle. Following appellant's departure from the Yakima area, and despite a temporary

support order outstanding in the divorce proceeding, the evidence established that Mrs. Russell was compelled to seek assistance from the state of Washington through the Aid to Dependent Children program in order to provide the necessities of life for the children. Appellant, in the meantime and during the period charged in the information, *i.e.,* from July 15, 1962, to February 18, 1963, contented himself with intermittently and in small amounts contributing an average of approximately $50 per month. And, inferentially, these meager payments were only forthcoming at the behest of the Yakima County Prosecuting Attorney's office, for they were paid through the errant fathers division of that office. At the time of trial, appellant was personally in court and his health and physical capacity were observable to the trial court. In the eyes of the trial court, the state, at the conclusion of its evidence, had established a prima facie case within the contemplation of RCW 26.20.080. In this we agree.

Appellant, in rebuttal, took the stand and stated that during the period involved he was employed in the trucking business at $3 per hour. As an excuse for not contributing more toward the care of his seven children, he testified that his employment was irregular and that his living expenses consumed the major portion of his income, which he estimated to be between $1,600 and $1,900 for the period involved. On cross-examination he revealed that he variously lived in a furnished apartment and a hotel, regularly took his meals in restaurants, visited and socialized with friends and relatives, and owned and operated a 1960 Ford automobile. He indicated no inclination or effort on his part to sell, mortgage or otherwise raise money for the support of his children through the medium of his automobile.

It is clear from the trial judge's oral decision that he did not believe the testimony of appellant relative to (a) his work record, (b) the amount of his earnings, (c) his living expenses, and (d) his desire or willingness to furnish support to his children. With respect to these factors, the trial judge stated:

The support itself was obviously inadequate. As a matter of law, the Court would be inclined to say that, but as a matter of fact we know that his children cannot be raised on seven dollars a month, or several times seven dollars a month. We do have a measure in a sense set by the Welfare Department as forty-two dollars a month. I do not adopt that as a measure, but it simply indicates children can not possibly be raised on this kind of money. At the same time, Mr. Russell was getting two hundred seventy-one dollars a month. *He did not indicate to us the precise figure; he did not indicate to us whether that was gross or net, after taxes. He was very indefinite, it seems to me, and unnecessarily indefinite in connection with his employment and his income;* but, assuming he has given us the correct figure, the two hundred seventy-one less approximately forty-eight dollars a month he paid, leaves him two hundred twenty-three dollars. Now, the Court is aware where necessary a person can live on substantially less than that. It might not be a luxury income, but it certainly is one that would afford him the opportunity to pay more toward his children than he actually paid, the grossly inadequate amount that he actually paid. *It seems to me under the circumstances his evidence shows affirmatively he wilfully failed to make the necessary payments for the children in accordance with the charge here made, and the Court feels there is no doubt, no reasonable doubt, not even a conjectural doubt, that he is guilty of the charge as it has been filed.* (Italics ours.)

■ The trial judge had the witnesses and appellant before him and could evaluate, first hand, the weight and credibility assessable to their testimony. Discounting appellant's testimony, as the trial court did and was entitled to do, we are convinced the evidence adduced amply supports the challenged findings of fact. Accordingly, we will not disturb them. *In re Davis v. Rhay,* 68 Wn.2d 496, 413 P.2d 654 (1966). The findings of fact, in turn, fully sustain the trial court's ultimate conclusions of law. Under these circumstances we will not substitute our judgment for that of the trial court.

By his second contention, appellant asserts that his initial trial counsel did not properly prepare and present his defense, thereby depriving him of a fair trial and due process

of law. Basically, this contention arises from appellant's belated assertion, by way of his motion to vacate the initial judgment, that he was never married to the mother of his seven children. The significance to appellant, at least, of this belated assertion on his part is accentuated by the fact that shortly after his arraignment in March, 1963, he married another woman—a lady with two children. Of this union two more children were born. These circumstances, appellant now contends should have been presented at his initial trial.

The evidence adduced at the hearing on appellant's motion to vacate the initial judgment fully supports the trial court's finding of fact that appellant's trial counsel was not made aware of the claimed invalidity of appellant's first marriage, either at the time of his trial on the nonsupport charge, or at the time of an earlier hearing in a filiation proceeding involving appellant, two children, and yet another woman at which his trial counsel represented him. The fact of the filiation proceeding and its disposition— which turned upon the willingness of the complaining witness' then husband to adopt the two children—was before the trial court at the time of the trial in the instant case; however, appellant's trial counsel—envisioning a possible bigamy charge—did not deem it advisable to emphasize appellant's involvement in a second marriage with its introduction of still more children into the picture. Instead, appellant's trial counsel energetically pursued other avenues of defense in such a fashion as to prompt the trial judge to remark at the conclusion of the trial that counsel had

> made as fine a record from the standpoint of the defense as could possibly have been made, and every conceivable technical objection or non-technical objection and defense has been presented to the Court that the mind of man could possibly have raised in this type of case.

Thereafter, appellant's trial counsel effectively persuaded the trial judge—who was somewhat inclined to deal rather harshly with appellant—to conditionally suspend imposition of any jail sentence.

Against this backdrop of circumstances, we are in full accord with the trial court's ultimate finding that appellant's trial counsel exercised all reasonable care and skill in the presentation of appellant's case and that appellant received a fair trial and competent representation.

The judgment is affirmed.

FINLEY, C. J., HILL, WEAVER, HALE, NEILL, and MC-GOVERN, JJ., concur.

HUNTER, J. (dissenting)—The defendant in this case stands convicted of a crime which is not on the statute books—failure to *more adequately* support his children. The statute we are concerned with, RCW 26.20.030, makes it a crime to willfully fail to furnish necessary support for one's children. The uncontradicted evidence in the record and the trial court's findings of fact bear out the undisputable fact that the defendant did not earn sufficient income to furnish necessary support for his children, during the period charged in the complaint. This is an absolute defense to the crime of nonsupport under the statute. The defendant has established this defense, on my reading of the record. Moreover, the trial court's findings of fact confirm this conclusion.

The trial court found, and the record sustains the finding, that the defendant failed to "more adequately support" his children. It then concluded as a matter of law that this fact rendered the defendant guilty of willful nonsupport, presumably aided by the statutory presumption. (RCW 26.20.080 supplies a prima facie presumption of willfulness on a showing that necessary support was not furnished.) The trial court's findings do not sustain its conclusion of law, that the defendant is guilty of the crime charged, because a showing of inability to furnish necessary support, which is a "legal excuse," was made and is represented as a fact in the trial court's own findings.

The evil the legislature was seeking to cure with this statute is clear. The legislature intended that a parent may be found guilty of a felony if he has the ability to provide

necessary support for his children and willfully refuses to do so. The legislature did not see fit to address itself to the situation presented by this case, that is, where a parent who lacks the ability to provide necessary support for his children willfully fails to furnish them with more support than the amount he is currently providing. The legislature may decide to enact a statute which would deal with the situation in the instant case, but it has not yet done so.

The presumption of willfulness under RCW 26.20.080, as applied by the majority to the facts of this case, constitutes an unconstitutional deprivation of due process of law. This is because, as the majority reads the statute, the presumption supplies the necessary element of willfulness even though it is factually impossible for the defendant to provide the standard of support called for in the statute. Such application of the presumption eliminates any " . . . rational connection between the fact proved and the ultimate fact presumed," and transgresses the Fourteenth Amendment. *United States v. Romano*, 382 U.S. 136, 139, 15 L. Ed. 2d 210, 86 Sup. Ct. 279 (1965).

Further, the majority by its construction of the enactment, *supra*, has made it a crime to be unable to meet one's financial obligations, in violation of the constitutional prohibition of imprisonment for debt.

I would reverse the trial court and direct that charges against the defendant be dismissed.

Rosellini, J., concurs with Hunter, J.