### STATE vs. OSCAR RANSELL.

Under the statute (Gen. Statutes, tit. 51, sec. 75,) which provides a penalty for "all persons who misspend what they earn and do not provide for the support of themselves and their families," it is not necessary that there should be a morally improper expenditure of the earnings, but it is enough if a man having a family dependent on his earnings, and earning sufficient for their support, appropriates his earnings to other purposes, with an intention to leave his family unprovided for.

The fact that a man married his wife unwillingly, and to secure his discharge from a bastardy proceeding, and upon assurances that he would not be bound to live with her, does not in any way affect his duty to support her.

The statute mentions, besides persons who neglect to support their families, sturdy beggars, vagabonds, fortune tellers, dissolute persons and common drunkards. Held that it was not to be inferred that the class of persons intended by the clause in question was to be of the general bad character of the other classes mentioned.

The information charged a misspending by the defendant of his earnings, and a neglect to support his family on a certain day named. Held that the state was not limited to proof of such conduct on a single day, but might show that he had so conducted from the time of the marriage to the institution of the prosecution, about a month; such evidence being admissible, if not as substantive proof of the crime on the particular day, yet at least as proof of the intent of his conduct.

INFORMATION, charging the defendant with misspending his earnings and not supporting his family; brought by appeal from the City Court of the city of Bridgeport to the Superior Court in Fairfield County, and tried to the jury, on the plea of not guilty, before *Foster, J.*

VOL. XLI.—55

On the trial the public prosecutor offered evidence to prove that on the 28th of April, 1874, the accused was lawfully married to Marina Campbell; that about the middle of July, 1874, she was delivered of a child which was now living; that at the time of the marriage she had one child about three years of age, she not having been previously married; that since her marriage with the accused he had not lived with her, nor provided her with any of the necessaries of life, nor contributed in any way whatever to her support or that of her children, though receiving a salary of $225 as a church sexton, and $8 per week as a hired servant; that he contributed nothing toward her lying-in expenses, but that she was confined at the house of her mother, with whom she had since lived with her child; and that neither Mrs. Campbell nor her daughter had any property nor any means of livelihood, save their own earnings from day to day.

To all the evidence of non-support and lack of contribution to expenses of lying-in and sickness, save as it applied to the day mentioned in the information, the accused objected, but the court overruled the objection and permitted general inquiries to be put covering the interval between the marriage and the date of the information.

It appeared in evidence that the accused was arrested on a complaint made by the said Marina against him, under the statute relating to bastardy, on the evening of the 28th of April, 1874, and taken before a justice of the peace at Bridgeport; that a hearing was then had before the magistrate, and as the result of the same that the parties were married by the justice the same evening.

During the examination the accused admitted that he had had sexual intercourse with the said Marina.

It further appeared in evidence that the said Marina was a native of King and Queen's County, Virginia, where she was born a slave, and where she lived till since the close of the rebellion, when with her mother she came to Bridgeport, where she had since resided; that previous to her marriage her reputation for chastity was not good; but that since that time nothing had been said against it.

State *v.* Ransell.

It was claimed by the accused that on the evening of his arrest, on the 28th of April, 1874, he was taken by the officer to the office of a lawyer in Bridgeport, about seven o'clock, where he was apprized of the nature of the proceedings, and informed that he must go to jail or marry the girl; that he positively declined to marry; that he was taken about 8 o'clock the same evening by the officer to the house of the justice where he met the lawyer and the girl; that he was there repeatedly informed that he must give bonds, $500 being mentioned as the amount, go to jail and remain till August, or marry; that until half-past 9 o'clock he declined absolutely to marry; that he was told that it would be best under the circumstances, and that he need not live with the girl after marriage, but that he could get a divorce and would not be bound to her; and that, by reason of these representations, made to him under these circumstances, he was induced to change his. mind and marry, and was married about 10 o'clock in the evening; that the accused and his wife left the house of the justice together, separated at the second corner, and had not met each other since, save once casually on the street.

These claims of the accused were denied on the part of the prosecution, so far forth as that any representations were made to the accused to induce him to marry by stating that he need not live with his wife, that he could get a divorce from her, and would not be bound to her.

The counsel for the accused claimed, and asked the court to charge the jury, that if they should find the accused, after repeated refusals to marry, was· induced to change his purpose by these representations made to him by the justice, officer or attorney, while under arrest, he· was not in. law criminally liable for the support of the woman, and not within the provisions of the statute. The court declined so to charge, but charged as follows:—"The law imposes upon the husband and wife the reciprocal duties of the marriage relation while that relation continues, without reference to any particular circumstances connected with their marriage. In this part of the case the only inquiry is, has a legal

marriage been proved? If the proof falls short of that—if from fraud, or other sufficient cause, you find this proceeding constituted no marriage, that it was a nullity, the case comes to an end; there need be no further inquiry, for very clearly a man cannot be made liable to support a wife and family who has not been married. But if you find from the evidence that here has been a lawful marriage, any statements made to him, any representations, any inducements, preliminary to that marriage, are, for present purposes, of no consequence. Our law recognizes no difference in marriages. This ceremony performed by the justice was either a valid marriage, and imposed all the obligations and duties of that relation upon each of the parties to it, or it was utterly void and of no effect. If there was a valid marriage, the character of the woman for chastity, either before or after marriage, would not affect the questions here involved. The liabilities of the husband would not be affected. He would still be bound to support her while she remained his wife."

The accused further offered evidence to prove, and it was not disputed, that he had been since his marriage and was for a long time previous, a sober, industrious, prudent man, temperate in all his habits; that he was not prodigal or wasteful of his earnings, nor a squanderer of his money; that he had been sexton of the church for six years, and had the confidence of its officers; that he had aided his brother's family, who were poor, paying their doctor's bills and otherwise affording them relief; and that his character and habits of life were unexceptionable, except his conduct toward this woman.

In this part of the case the counsel for the accused claimed, and requested the court to charge the jury, that to find the accused guilty they must be satisfied beyond a reasonable doubt that the accused wilfully misspent his earnings, and that the legal purport of the term "misspent," in this connection, was to spend amiss, to squander, to waste, and that to convict they must be satisfied beyond a reasonable doubt that the accused squandered or wasted those earnings which he should have appropriated to the support of himself and

family, and did not otherwise provide for them; and in this connection the counsel called the attention of the court and jury to the section of the statute upon which the information was based, and claimed, and requested the court to charge, that to convict they must find that the accused was a person of character and habits similar to the other classes of persons enumerated in that section of the statute.

The court declined so to charge, and charged as follows:— "All questions of character, except in answer to the inquiry, does the accused misspend his earnings, are totally out of the case. The accused is prosecuted under a particular clause of the section of the statute which has been read; the other clauses have nothing to do with this question, and it matters not what classes of persons are mentioned in them. The question is, does he misspend his earnings? And to determine that question in the affirmative, it is not necessary to prove a criminal, reprehensible, or morally improper expenditure of earnings. The statute is violated when a man, having means sufficient to support his family, appropriates those means to other purposes, leaving his family unprovided for. Misspending money is spending it differently from what we ought. If this man has laid out his earnings for the support of his brother's family, or in the purchase of musical instruments, costing a hundred dollars apiece, leaving his wife and child without support, it is a misspending of his earnings under this statute. The accused is before you for a vicious omission of duty, and be his character ever so good, he is responsible if the omission be proved."

The jury rendered a verdict of guilty, and the defendant moved for a new trial for error in the rulings and charge of the court.

*Bullock*, in support of the motion.

1. The offense set forth in the indictment is not a common law offense. In accordance with the well settled rule of law, this statute then must be construed strictly, and the person accused must be shown to come exactly within its

description. *Morse* v. *State*, 6 Conn., 12; *People* v. *Forbes*, 4 Parker Crim. R., 611.

2. It is conceded that the allegation of "misspending earnings" is a necessary and vital one, and that this misspending of earnings is an important and vital inquiry for the jury. Now the statute must be so construed as to give proper force to all the words employed in their ordinary sense. There are really here two clauses constituting this offense, connected by the conjunction "and"; the one comprehending a *vicious act*, the other a *vicious omission;* the one is as prominent and important as the other. A *vicious omission* is all the court below instructed the jury to find; to give proper force to the entire conjunctive clause they should have been instructed to find as well a *vicious act*. The construction given deprives the term "misspend" of all its force in the statute. Under it any person having earnings and not supporting his family is within its provisions. This construction is too narrow. The word has a more positive meaning. It implies in this connection a mis-appropriation, a spending to a bad or to no purpose, a wasting, a squandering. To misspend time is to waste it. To misspend earnings or money is to waste them or expend them prodigally.

3. The instruction to the jury that all testimony to show the habits of the accused in this particular had no pertinency to the issue and was outside of the case, was unjust to the accused, and erroneous. *Commonwealth* v. *Sullivan*, 5 Allen, 513. The good character of an accused person should always have weight with a jury, especially so when habits and character are an essential ingredient.

4. It is manifest the section in question was intended to provide work for a class of vagrants, vagabonds, idle and dissolute persons, nuisances to the community, and the class included in the clause in issue is a class of dissolutes who "waste their substance in riotous living," leaving their families, by reason of the same, unprovided for. The object of the statute should in its construction be kept constantly

in view. *People* v. *Forbes*, 4 Parker Crim. R., 614. We should seek in the construction of a statute the mischief the common law did not provide for. 1 Swift Dig., 11. The title of a statute should be regarded in giving it a construction. Id., 12. This statute is an ancient one and it received its title at the time of its enactment by the legislature of 1727. 7 Col. Records of Conn., 128; *Rawson* v. *The State*, 19 Conn., 292. " The best ground of exposition of a statute is to take the entire provisions of the act and ascertain, if possible, what the legislature intended." SHAW, C. J., in *Cleaveland* v. *Norton*, 6 Cush., 384.

5. The circumstances, time, place and manner of the marriage, as testified to, were proper to be considered by the jury in passing upon the criminal intent, the vicious act and vicious omission of the accused. The representations and inducements made to bring the accused to a consent, and the effect they had upon his mind and subsequent conduct toward the complainant, were proper subjects of inquiry for the jury.

6. The evidence should have been confined to the day inserted in the information. When the time is made a part of the information, the evidence must be confined to that time, and when but one date appears evidence of habitual repeated occurrences cannot be introduced. *Commonwealth* v. *Elwell*, 1 Gray, 463; *Commonwealth* v. *Sullivan*, 5 Allen, 513; *Commonwealth* v. *Norton*, 13 id., 550; *Barth* v. *The State*, 18 Conn., 432.

*Olmstead*, State Attorney, and *Lockwood*, contra.

PHELPS, J. The information in this case is brought for the violation of one of the several clauses of section seventy-five, of chapter four, of title fifty-one, of the Revised Statutes of 1866, and the motion is predicated on certain alleged errors of the court in its ruling on the question of the admissibility of certain evidence, and in the instruction given to the jury.

The charge of the court is first objected to for the reason that the jury were instructed that the law imposes on husband and wife the reciprocal duties of the marriage relation while

it continues, without reference to any particular circumstances connected with the marriage; and that if a marriage lawful in form and free from fraud or other invalidating difficulty was proved, the husband was bound to support the wife without regard to her previous character or conduct, or to any advice given or inducements held out to him, by reason of which he changed his determination not to marry.

In this we perceive no error. The instruction was of course given with reference to the facts in the case, and the recital in the motion shows that the defendant was acquainted with the previous character of his wife and participated in the wrongful conduct of which she is claimed to have been guilty before the marriage. Any representations made to him while under arrest upon a process seeking to compel him to give security for the support of an unborn child whose paternity was charged to him, to the effect that he had better marry to avoid imprisonment, and that he need not live with and could obtain a divorce from his wife, though they may have operated to remove his objections to the marriage, yet they constitute no legal defence to a prosecution against him for misspending his earnings and not providing for the support of his family. If the obligation to support a wife and children may be held to be contingent upon such considerations, the security for their proper maintenance, now in many cases quite uncertain, will be precarious indeed.

It is further objected that the court declined to instruct the jury that to find the defendant guilty they must be satisfied beyond a reasonable doubt that he wilfully misspent those earnings which he should have appropriated to the support of his family, and did not otherwise provide for them, and that to convict the defendant they must find that he was a person of similar habits and character to those of the other classes of persons enumerated in the same section of the statute.

The jury were told that the other clauses in that section, and all questions of character, except as pertinent to the inquiry whether the defendant misspent his earnings, were immaterial, and that to determine that question in the affirma-

tive it was not necessary to prove a criminal, reprehensible, or morally improper expenditure of earnings; and that this clause of the statute was violated when a man having a family and earnings sufficient for their support, appropriates them to other purposes, leaving his family unprovided for; and that he was responsible if a vicious omission of duty was proved.

By this we do not understand, and we think the jury could not have understood the court to mean, that an intent to violate this provision of the law was not necessary. We think a vicious omission of duty includes such an intent. The record shows that the defendant deserted his wife immediately upon the marriage, and in fact married her with that purpose, and continued such desertion until his arrest upon the information. The intent to abandon his wife and his deliberate refusal to support his family, were under the circumstances necessarily found by the jury. The fact also appears that he was in the receipt of sufficient earnings, and thereby possessed the ability, to furnish the necessary support, but instead of doing that, that he expended them in assisting the family of his brother and for other purposes, all which may have been otherwise lawful, and not a literal wasting or squandering of his means, yet, accompanied by the wrongful intent, none the less a misspending with reference to the support of his family. We think the charge was in this respect unexceptionable.

The court admitted evidence offered by the state to prove the fact of non-support by the defendant of his family during the entire time, which was about a month, between the marriage of the parties and the commencement of the prosecution; to which the counsel for the defendant objected, except as to that which applied only and directly to the day named in the information.

We do not doubt but that the evidence was admissible, if not as substantive proof of the commission of the offence on the day named, at least to show the guilty intent to withhold the support which the law imposed on the defendant, and the intentional refusal to furnish which is an essential element

in the offence. It may have been satisfactorily shown by a less amount of proof, or by that embraced within a narrower space of time, but we see no objection to it in its application to the question of intent existing in the mind of the defendant on the day named in the information.

We advise that a new trial be not granted.

In this opinion the other judges concurred; except Foster, J., who, having tried the case in the court below, did not sit.