Argued October 27, decided November 11, 1913.

# MILLER v. MILLER.*

(136 Pac. 15.)

**Domicile—Definition.**

1. The domicile or habitancy of a person is that fixed place of abode to which he intends to return habitually when absent.

[As to what is domicile, and how it may be lost or changed, see notes in 32 Am. Dec. 427; 59 Am. Dec. 111; 48 Am. St. Rep. 711.]

**Divorce—Jurisdiction—Separate Domicile of Wife.**

2. A wife, whose husband by his misconduct has rendered life with him unbearable, may acquire a separate domicile, based on which she may institute a divorce suit.

**Divorce—Domicile of Wife—Evidence—Admission.**

3. Statement of a wife, in a complaint for divorce, which she caused to be prepared in one state, that she was a resident thereof is not conclusive against her in a subsequent divorce suit instituted by her in another state, but is only an admission against interest.

[As to domicile of married women, see notes in 84 Am. St. Rep. 27; 85 Am. St. Rep. 559. As to right of married woman to acquire separate domicile after abandonment of marriage relation, see note in Ann. Cas. 1912D, 397.]

**Divorce—Jurisdiction—Domicile—Place of Voting.**

4. That one, after registering as a voter in Oregon went into another state and there voted, is not conclusive of his domicile there, as regards jurisdiction of an action for divorce, Section 3318, L. O. L., providing "if a person shall go from this state into any other state * * and there exercise the right of suffrage, he shall be * * held to have lost his residence in this state," being a rule governing judges of election in determining right to vote in the state.

**Divorce—Domicile of Parties—Evidence.**

5. Evidence in a divorce suit as to temporary purpose of absence and intention to return, *held* to show the domicile of the parties, who, having had a permanent home in the state, went to another state and then returned, to be in the state, within Section 509, L. O. L.,

---

*As to domicile of wife for purposes of divorce, see notes in 16 L. R. A. 497 and 59 L. R. A. 146; and upon the right of a wife to acquire a separate domicile for the purposes of a divorce suit by her, see note in 38 L. R. A. (N. S.) 297.

On the question of the character of residence essential to give jurisdiction in divorce proceeding, see notes in 12 L. R. A. (N. S.) 1100 and 28 L. R. A. (N. S.) 992; and for local domicile or residence as a condition of jurisdiction of action for annulment of marriage, see note in 30 L. R. A. (N. S.) 745.　　　REPORTER.

requiring plaintiff in a suit for divorce, at the time of instituting it, to be, and for a year prior thereto, to have been, an inhabitant of the state.

**Divorce—Decree—Support of Children.**

6. The question of support of the children may be left open by the decree of divorce, there being no evidence as to what is proper or requisite therefor, Section 514, L. O. L., authorizing modification of a divorce decree, at any time after it is given, as to support of the children.

From Wallowa: JOHN W. KNOWLES, Judge.

En Banc.   Statement by MR. JUSTICE BURNETT.

Christine Miller brings this suit against M. P. Miller, her husband, for the dissolution of a marriage contracted between them in the state of Minnesota, October 31, 1889. She alleges "that for more than one year last past plaintiff has been, and now is, a resident and inhabitant of Wallowa County, in the State of Oregon." After setting out the marriage and the births and ages of their children, she states, in substance, that although she has been a good and dutiful wife, the defendant has treated her in a cruel and inhuman manner, rendering her life burdensome, specifying various false charges of promiscuous unchastity, and sundry assaults and batteries committed by the defendant upon the plaintiff. She gives a list of the defendant's real property and sundry items of personalty, with the valuation in each case, and avers that she has no means of support or maintenance for herself and the minor children mentioned, except such as she can derive from her own labor and a small assistance from her eldest son. She prays for alimony *pendente lite,* for a dissolution of the marriage contract, and for the care and custody of her eight minor children mentioned; that she be decreed to be the owner of an undivided one-third interest in the lands described, and for the gross sum of $2,500 for the sup-

port and education of the minor children, and for further relief.

The answer of the defendant contains no denial of any of the allegations of ·the complaint, but states affirmatively "that said plaintiff is the wife of ·this defendant, and that the said plaintiff is now, and for more than two years last past, she has been, a resident and inhabitant of the state of Idaho, residing in the county of Latah, in said state; that the said defendant is now, and for more than two years last past has been and now is, a resident and inhabitant of the state of Idaho, residing in Latah county, said state." The other allegations of the answer simply amplify the averments already quoted.

The reply denied the answer, except that the plaintiff is the wife of the defendant. On this state of the pleadings the Circuit Court heard the testimony on the issue of the habitancy of the plaintiff and took testimony in behalf of both parties on the allegations of the complaint, and on July 31, 1913, entered a decree to the effect that the complaint be dismissed for want of jurisdiction of the court over the parties. The plaintiff appeals.          REVERSED.

For appellant there was a brief over the names of *Mr. O. M. Corkins* and *Messrs. Sheahan & Cooley,* with an oral argument by *Mr. A. S. Cooley.*

For respondent there was a brief and an oral argument by *Mr. Charles Thomas.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The principal question· to be determined is whether or not the plaintiff has shown enough to confer jurisdiction upon the court over the subject matter of the suit within the meaning of Section 509, L. O. L.,

reading thus: "In a suit for the dissolution of the marriage contract, the plaintiff therein must be an inhabitant of the state at the commencement of the suit, and for one year prior thereto; which residence shall be sufficient to give the court jurisdiction, without regard to the place where the marriage was solemnized, or the cause of suit arose."

In *Reed's Will,* 48 Or. 500 (87 Pac. 763), Mr. Chief Justice BEAN says: " 'Domicile,' strictly speaking, is the relation the law creates between an individual and a particular place or country, and each case is dependent upon its own particular facts. It is not in a legal sense synonymous with 'residence.' A person may have more than one residence and more than one home, in the ordinary acceptance of those terms, but he can have only one domicile, and the law requires that for the purpose of the succession of his property he be domiciled somewhere."

1. The domicile or habitancy of a person is that fixed place of abode to which he intends to return habitually when absent. Owing to the element of intention to return, the difficulty is not so much in definition as in the application of the principle to the particular facts involved in any given case: *Dormitzer* v. *German Sav. & Loan Soc.,* 23 Wash. 132 (62 Pac. 862.) In the case at bar both parties agree that for about eight years they lived and had their home and habitation and permanent residence in Wallowa County, in this state. It remains to determine whether the situation was changed in a legal sense by what follows. The parties with their children, in the latter part of June, 1911, took part of their household goods, consisting of some bedding and a table, and went to Idaho for the purpose, as stated by the defendant, of educating some of the older children at a denominational school in that state. A number of the witnesses testify that at the

closing exercises of a school near their home in
Wallowa County, shortly before they departed for
Idaho, the defendant, in an address, publicly stated
that he was going to Idaho to educate his children, but
that he intended to return. It appears in evidence,
and he admits that he posted a notice on the door of
their dwelling in Wallowa County to the effect that
he had gone to Idaho and would return in about four
weeks. He remained in that state until some time in
February, 1912, when he returned to Wallowa County,
Oregon, and remained there two months. During that
time he registered as a voter in that county, and en-
gaged in the business of selling some lumber which he
had on hand. Returning to Idaho after the expiration
of that two months, he stayed there until about the
1st of November, 1912, when he returned to Wallowa
County, and has remained there continuously since
then, engaged in selling the lumber mentioned.

The plaintiff herself, after going into Idaho with
the defendant, remained there continuously until April
29, 1913, when she returned and filed the complaint in
this suit on the following day. During the time the
defendant was in Idaho the last time, he voted at an
election there, although he had previously registered
in Oregon. On August 19, 1912, the plaintiff con-
sulted an attorney in Idaho, and he drew up for her a
complaint against the defendant for a divorce upon
substantially the same grounds as the complaint in
this action, in which she alleged that she "is and has
been a resident of the state of Idaho for more than six
months immediately preceding the commencement of
this action." This complaint was verified by her be-
fore a notary public of that state, but was never filed
in any court. As a reason for not filing it she states
that on the promises of the defendant to amend his
conduct she returned and lived with him in Idaho about

two months. She then, as she says, corroborated by other testimony, on account of the continued ill-treatment of her by the defendant, moved out of the house in which they resided, and went to stay with her eldest son, in a house which he had rented for the accommodation of the other children and herself. About this time the defendant had returned to Oregon, as above stated, where he has since remained. He engaged in no permanent business in the state of Idaho so far as the record discloses. Concerning her own mental attitude, she says, speaking of what she considered the most definite place to which she might eventually arrive: "Why, I have thought of Oregon more than anything else. We had our property there, and had our folks there." In respect to her verification of the pleading prepared in Idaho, she says that she did it "simply because I had been wanting to start one (a suit) for years and years back, and I had been held back by force. I had been ready to go and leave the place two or three times, but he has held me back by force, and, the children being small, I couldn't do anything"; and, further, in substance that the attorney explained that all that was necessary was that she had been personally in that state six months. Speaking of their living together in Idaho, she says: "I was staying in Idaho six months. We lived there and kept house there. We had our home in Oregon here, and intended to stay here"—and she says that the defendant, in speaking of the house in which they lived in Idaho, said that "it would do as a place to hang up on." This statement is not denied by the defendant.

2. In determining the residence or permanent habitation of the plaintiff necessary to give the court jurisdiction, the principal canon to be applied is, To what place did the plaintiff intend to return after the object of her going to Idaho for the education of her

children had been accomplished? It is contended by the plaintiff that this must be worked out by the domicile of the husband. This, however, is not an invariable rule of construction. It is possible for a wife, whose husband by his misconduct has rendered life with him unbearable, to acquire a separate domicile, based upon which she may institute a suit to dissolve the marriage contract: *White* v. *White,* 18 R. I. 292 (27 Atl. 506); *Jenness* v. *Jenness,* 24 Ind. 355 (87 Am. Dec. 335); *Hopkins* v. *Hopkins,* 35 N. H. 474; *Cheever* v. *Wilson,* 9 Wall. (U. S.) 108, 123 (19 L. Ed. 604); *Ditson* v. *Ditson,* 4 R. I. 87; *Perzel* v. *Perzel,* 91 Ky. 634 (15 S. W. 658); *Craven* v. *Craven,* 27 Wis. 418; *Harding* v. *Alden,* 9 Greenl. (Me.) 140 (23 Am. Dec. 549).

As said by Mr. Justice BEARD in *Duxstad* v. *Duxstad,* 17 Wyo. 411 (129 Am. St. Rep. 1138, 100 Pac. 112): ''We think the rule is that the wife's residence is that of her husband, save in exceptional cases, when she can, on account of necessity, establish and claim a separate residence. One of such exceptions is when he has given her cause for divorce. In that case it has been generally held that she may acquire a separate residence in another jurisdiction which will entitle her to maintain an action for divorce in that jurisdiction. This she may do; but her husband cannot by his wrongful acts and by mistreating her compel her to do so; * * she may still claim his residence as hers, at least until she has established a residence elsewhere.''

Considering, however, the domicile of the wife as governed by the general rule that it is determined by that of the husband, we recall that the original domicile of the parties was confessedly in the State of Oregon; that for the purpose of educating the children they migrated into Idaho; that by a great prepon-

derance, in numbers, the witnesses said that he announced his intention to return, and that his absence would be only temporary. These statements and this intention are illustrated by the actual fact that he finally did return to Oregon, and has since remained here. However long continued, the education of the children was manifestly a mere temporary purpose. The defendant's business and property were in the State of Oregon. His *animo revertendi* was clearly demonstrated by his actions.

3, 4. Much stress was laid in argument for the defendant upon his voting in Idaho, and that the plaintiff had caused the preparation of the complaint there in which she avowed a residence in that state. Her statement on that point is only an admission against her present interest, and is not conclusive upon her. In our judgment, its effect is overcome by other evidence, and the circumstances under which it was made. As to his voting, we cannot say, in the absence of the laws of Idaho from the record, that it has any effect one way or the other in establishing his domicile there. It is true that, among the rules governing judges of election in the determination of the right of a person to exercise the electoral franchise here, it is laid down that "if a person shall go from this state into any other state or territory and there exercise the right of suffrage, he shall be considered and held to have lost his residence in this state": Section 3318, subd. 7, L. O. L. This regulation is a conventional one, applicable in its full force only to elections, and was not intended to be controlling over any other subject. At best, it is only a circumstance to be weighed with other evidence on the present issue. Considered in connection with the defendant's previous registration in Oregon, his voting in Idaho savors strongly of a

self-serving declaration, and as such is of no conse-
quence.

5. Considered, then, in the light of the husband's
domicile governing that of the wife, the weight of the
testimony is in favor of the plaintiff. Added to this is
her own declaration that she constantly had in mind a
return to this state where their property and relatives
were situated. The actions of the defendant speak
louder than his mere words. He not only had the
purpose of returning, but actually did return. We
think from a careful review of all the testimony and
the actions of the parties that the legal domicile of
both of them in the State of Oregon is established by
a decided preponderance of the evidence, and that the
court had authority over the parties and the subject
matter of the suit.

6. As a matter of pleading, the defendant stakes
his whole case in an attack upon the jurisdiction of
the court. He makes no denial of the plaintiff's al-
legations of cruel and inhuman treatment. Without
attempting to analyze in detail the testimony given by
the plaintiff in support of her allegations in that re-
spect, and of the defendant's showing in opposition
thereto, it is sufficient to say that her complaint is
thoroughly established upon the merits. She does
not pray for an allowance for the support of herself
alone, as she might have done, and there is no testimony
as to what is proper or requisite for the support of
the children. Under these circumstances we must
leave the question of support for the children open,
under the authority of *McFarlane* v. *McFarlane,* 43
Or. 477, 486 (73 Pac. 203, 75 Pac. 139), holding that
the courts on proper notice may require parties in de-
fault to contribute to the future support of their minor
children, and to pay a reasonable sum for their past
support, as the duty of parents to care for and educate

their offspring is not affected by a divorce. Section 514, L. O. L., provides that "at any time after a decree is given, the court or judge thereof, upon the motion of either party, shall have power to set aside, alter, or modify so much of the decree as may provide for the appointment of trustees for the care and custody of the minor children, or the nurture and education thereof, or the maintenance of either party to the suit." Under this section and the precedent noted, we may well leave to the Circuit Court the task of determining what is necessary and requisite to be done respecting the maintenance of the children. A decree will be here entered granting to the plaintiff a dissolution of the marriage contract, one-third of the real property of the defendant described in the complaint, the custody of the minor children of the parties, and the costs and disbursements of this litigation.

The decree of the Circuit Court is reversed in the manner indicated.    REVERSED.