Submitted on briefs November 12, reversed and remanded December 3, 1918.

## STATE v. LANGFORD.

(176 Pac. 197.)

**Parent and Child—Nonsupport of Child—Statutes.**

1. Statutes such as Laws of 1917, page 175, amending Laws of 1913, page 472, as amended by Laws of 1915, page 359, which make it an offense for a person without just or sufficient cause to fail to support his children, are intended to compel a father when able to do his full duty, but do not define the duty of a father.

**Parent and Child—Support—Father.**

2. It is the legal duty of a father to support his child in accordance with his ability and circumstances, etc.

**Divorce—Duty to Support—Effect of Decree.**

3. A decree of divorce awarding custody of the minor child of the marriage to the mother is not *res judicata* as to the duty of the father to support.

> [As to duty of father to support child awarded to mother by divorce decree silent as to maintenance, see notes in 114 Am. St. Rep. 700; Ann. Cas. 1913C, 296; Ann. Cas. 1915D, 813.]

**Parent and Child—Duty to Support.**

4. The primary obligation on the part of the father to support his child is not taken away by Section 7039, L. O. L., etc., relating to the duty of both parents to maintain their children.

**Parent and Child—Support—Obligation.**

5. The duty to support offspring is a continuing obligation.

**Parent and Child—Support—Statute.**

6. In a prosecution under Laws of 1917, page 175, making it an offense for any person without just or sufficient cause to fail to support his children, proof of a complete failure to support is not necessary to conviction; proof of failure to provide adequate support being sufficient.

Parent and Child—Nonsupport—Intent.

7. A wicked intent is not an essential element of the crime of failure to support children denounced by Laws of 1917, page 175.

Parent and Child—Nonsupport—Defense—"Just"—"Just or Sufficient Cause."

8. Under Laws of 1917, page 175, denouncing the offense of failure without just or sufficient cause to support children, the expression "just or sufficient cause" means legal or lawful cause, the word "just" being derived from the Latin "justus," which is from "jus," meaning a legal right; hence, while the law does not require the impossible, the cause for failure to excuse must be lawful cause.

Parent and Child—Nonsupport—Excuse.

9. That a wife has means of her own and supports children is no defense to a prosecution against the husband under Laws of 1917, page 175, for failure, etc.

Parent and Child—Nonsupport—Excuse.

10. The remarriage of the mother of a child after divorce from the father is no defense to a prosecution against the father under Laws of 1917, page 175, for failure to support the child, as that duty does not devolve on the stepfather in the absence of a showing that he stands in *loco parentis.*

Criminal Law—Proof Beyond Reasonable Doubt.

11. A prosecution under Laws of 1917, page 175, for failure to support his child, being a criminal action, the state must prove beyond a reasonable doubt that defendant failed and neglected without just or sufficient cause to support his child.

Parent and Child—Nonsupport—Defenses.

12. Where 'a' father, after divorce from his wife, who was awarded custody of the minor child, remarried, the father is entitled, in a prosecution under Laws of 1917, page 175, making it an offense for any person without just or reasonable cause to fail to support his wife or children, to show his inability to support his second wife, etc., much less the child; the remarriage, which was lawful, having occurred before passage of Laws of 1917, at which time the father was by Laws of 1913, page 472, as amended by Laws of 1915, page 359, excepted from penalty for failure to support such child, etc.

Parent and Child—Nonsupport—Evidence.

13. In a prosecution under Laws of 1917, page 175, for failure to support his minor child of a former marriage custody of which had been awarded the mother, evidence as to the refusal of the father to support the child prior to Laws of 1917, *held* admissible on question whether his failure was without just cause, particularly as failure was no offense under law prior to time Laws of 1917 went into effect, etc.

Witnesses—Cross-examination.

14. The court may on its own motion without objection from counsel exclude cross-examination intended only to humiliate the witness.

From Clatsop: JAMES A. EAKIN, Judge.

In Banc.

George H. Langford was convicted of the crime of failure to support his minor child and he appealed. The indictment is dated June 19, 1917; it was filed June 20, 1917; and it charges that on June 1, 1917, in Clatsop County, Oregon, the defendant did "without just or sufficient cause, fail, refuse and neglect to support his said minor child, Wendell Langford."

The child's parents were married on January 28, 1902; Wendell Langford, the child, was born on June 2, 1905; and the father and mother were divorced on December 6, 1911. The mother married J. T. Jeffries in 1915; and the father married Mrs. June Bosdorfer on November 10, 1916. The trial occurred in September, 1917.

The record presented to us does not contain a copy of the decree of divorce or any satisfactory evidence of the exact terms of the decree so far as it relates to alimony for the divorced wife or maintenance for the child. The testimony supports the statement, however, that the decree provides for alimony and that the defendant was adjudged to be the party in fault, but there is no suggestion as to the amount or as to the time when the alimony is payable. It can be inferred from the evidence that the decree awards the custody of the child to the mother, for the boy lives with his mother; and it is possible to infer also that the decree requires the father to pay some amount of money for the maintenance of the child; but the record does not disclose how much money is to be paid or whether the amount to be paid is payable in gross or in installments.

While the record does not name the place where the decree of divorce was granted, it is probable that the

decree was rendered in Astoria, Clatsop County. The mother resided in Astoria continuously from the date of the divorce until the time of the trial, except for a period of 13 months, when she was employed as a stenographer in Hillsboro, Oregon. The record does not definitely inform·us as to the whereabouts of the defendant except to tell us that for a year and a half prior to the date of the trial he had been living in Portland, Oregon, where he was conducting a barber-shop. A reading of the transcript of testimony, however, may leave the impression that although the defendant left Astoria at some time in the early part of 1912, he continued to reside in Oregon.

Upon obtaining a decree, the mother found employment as a clerk in a store during the daytime and she attended business college after working hours. Subsequently she quit clerking in the store and with the aid of funds loaned to her by a sister, the mother of the child gave her entire time to her studies and was able to graduate from the business college. After graduating, she secured employment and earned as much as $60 per month during part of the time. The record does not satisfactorily show whether the mother worked as a stenographer continuously after her marriage to J. T. Jeffries, but it does appear that she had employment during a portion of the time after 1915, and she testified at the trial that she had made arrangements for a place where she expected to work as a public stenographer. The mother furnished all the money used for the support of the child after February, 1912; and the defendant has not contributed any money since that date. The mother's present husband, T. J. Jeffries, was at the time of the trial serving as a captain in the United States Army; but after paying for his own necessary expenses it is probable that only a small por-

tion of his salary remained. The uncontradicted evidence is that the child is not old enough to work.

The defendant is a barber. He conducts a shop in Portland. He testified that he paid a rental of $8.50 per month for the shop and that he earned about $14 per week. He stated that he was in debt and that his earnings were not sufficient to maintain himself and his wife; and that "it has taken all the money" he "can make to support" himself and wife, and "that is the reason why" he could not contribute anything to his child. The present wife testified that the defendant had never purchased any clothes for her since their marriage in 1916, and that he had not bought any for himself except a pair of trousers; and she also stated that she had purchased a hat for him with money which she had earned by making a dress for some other person.

The defendant claimed that his arm had been dislocated about three years prior to the trial; that his hands were inclined to cramp, making him "heavy-handed"; and that he had been suffering with lumbago.

At the time of, or soon after the divorce, a city lot was deeded to the mother of the child and the defendant was given credit for $100 on account of alimony. In the latter part of 1911, or the early part of 1912, the defendant paid to the boy's mother cash amounting to at least $15, and probably aggregating $20; but he has not paid any sum whatever to the mother, for her or for the boy, since February, 1912.

The defendant claims that in May, 1912, he asked the boy's mother where Wendell was and that she told him that she had sent the boy to South America and that the defendant could not see the boy any more. The defendant says that he neither knew where the boy was nor saw him from about May, 1912, until July, 1917, although he admitted that he knew the boy's mother

had married J. T. Jeffries and was living in Astoria.
The undisputed evidence is that the boy had been attending the public schools in Astoria for at least two years and it is a fair inference to say that the evidence indicates that the child had been attending the schools for three years preceding the date of the trial; and, moreover, the evidence justifies the inference that Wendell had been in Astoria most of the time, if not all the time, after his parents were divorced.

The boy's mother stated that while she had asked the defendant to assist in supporting the boy prior to "the last three years," she had not made any demand within the last three years upon the defendant to support the child, because she had left the matter with her attorney. F. M. De Nèffe, an attorney, testified that he called upon the defendant on May 12, 1917, in behalf of Mrs. Jeffries

"to see whether he would not pay something on what the decree required that he should pay for the minor child, and I called at his barber-shop on Lombard Street and, I think, Peninsula Station; and I talked with him and told him what I was there for, to see whether he would not pay something on the decree, on the judgment, and he said that he would not pay the judgment; and I asked him whether or not he would not pay part of it, if he could not pay it all, and he said, no, he would not pay anything; and I told him that Mrs. Jeffries said that the child needed different things and she would like to get what she could anyway, and I asked him whether he could not pay $25 or $5. He said, no, he would not pay anything; and I asked him whether or not he would not pay something this month, or a small amount each month, $5, if he could not pay more, and he said no, he would not pay anything. That is about all that was said."

REVERSED AND REMANDED.

For appellant there was a brief submitted by *Mr. Richard Talboy* and *Messrs. Norblad & Hesse.*

For the State there was a brief submitted by *Mr. Ed C. Judd,* District Attorney, and *Messrs. G. C. & A. C. Fulton.*

HARRIS, J.—In 1907, the legislature enacted a statute entitled

"An act to punish a person for failing or refusing without just or sufficient cause, to support his wife or children, or to provide for their support": Chapter 78, Laws 1907.

Section 1, afterwards carried into Lord's Oregon Laws as Section 2166, reads thus:

"Any man who, without just or sufficient cause, shall fail to support his wife or child shall be deemed guilty of a misdemeanor, and shall be punished therefor by imprisonment in the county jail for not less than thirty days, nor more than one year."

In 1913, the legislature repealed Chapter 78, Laws of 1907, and enacted a new statute, Section 1 of which made it a crime punishable by imprisonment in the penitentiary or in the county jail for any person to fail or neglect, without just or sufficient cause, to support his wife or children: Chapter 244, Laws 1913.

In 1915, Section 1 of the act of 1913 was amended to read as follows:

"Any person who, without just or sufficient cause, shall fail or neglect to support his wife or children shall be deemed guilty of a felony and shall be punished therefor by confinement in the State prison for not less than one year nor more than three years, or by imprisonment in the county jail for not less than 30 days nor more than one year; provided, however, that when a decree of divorce between husband and wife has

90 Or.—17

been heretofore or shall be hereafter granted by any competent court, and the custody of the child or children, the issue of said marriage relations, has been or may be given by the court to either party to the suit, then the provisions of this Act shall not apply as to the other party to said suit'': Chapter 249, Laws 1915.

In 1917, the legislature amended Section 1 of the act of 1915 so as to make it read thus:

''Any person who, without just or sufficient cause, shall fail or neglect to support his wife, or female children under the age of eighteen years, or male children under the age of sixteen years, shall be deemed guilty of a felony and shall be punished therefor by confinement in the State prison for not more than one year, or by imprisonment in the county jail for not less than thirty days nor more than one year'': Chapter 136, Laws 1917.

The act of 1917 did not become effective until May 20, 1917: *Cooper* v. *Fox,* 87 Or. 657, 661 (171 Pac. 408).

1. Many of the states have statutes making it a punishable offense for a father to fail to support his child or for a husband to fail to support his wife. The wording of most of the enactments coming under our observation is, in some particulars, different from the language of our statute; and, yet, nearly all the legislative acts passed in the different states are quite alike in substance. Different motives have been assigned for the adoption of legislation which penalizes a father for failing to support his wife or child. It is said by some courts and text-writers that the primary object is to redress a public grievance by relieving the public from the burden of caring for a helpless child or an indigent wife; while others take the view that these statutes, though criminal rather than civil in kind, are in the final analysis really designed as a remedy for the benefit of the wife or the child, in addition to the

remedies afforded by civil proceedings: *People* v. *Malsch,* 119 Mich. 112 (77 N. W. 638, 75 Am. St. Rep. 381); *State* v. *Waller,* 90 Kan. 829 (136 Pac. 215, 49 L. R. A. (N. S.) 588); 8 R. C. L. 306; 13 R. C. L. 1191. Notwithstanding some jurists may say that the theoretical ultimate purpose of nonsupport statutes is for the benefit of the public, and others may take the view that this sort of legislation is for the benefit of the wife or child, yet all can probably concur in the statement that the practical result sought to be accomplished is to compel the husband and the father, when able, to do his full duty. In *State* v. *Gillmore,* 88 Kan. 835 (129 Pac. 1123, 47 L. R. A. (N. S.) 226), the court pithily says:

"The object of the statute was to compel the husband, if he were able to do so, to support his wife and children."

Our nonsupport statute does not create a new duty; nor does it enlarge any previous obligation. When it enacted the statute, the legislature did not attempt to define the duty of the father or husband, but it assumed that the law had already imposed a duty upon him and, acting on such assumption, the lawmakers wrote and adopted a statute penalizing the father and the husband for any failure to perform such existent duty: *People* v. *Pierson,* 176 N. Y. 201 (68 N. E. 243, 98 Am. St. Rep. 666, 63 L. R. A. 187). We must, therefore, look beyond Chapter 136, Laws of 1917, to ascertain the legal duty imposed upon fatherhood.

2. It is the legal duty of a father to support his child. Some early American cases, like *Kelly* v. *Davis,* 49 N. H. 176 (6 Am. Rep. 499, 501), hold that "there is no legal obligation on a parent to maintain his child, independent of the statutes"; but this narrow and unnatural doctrine is repudiated by the great majority of American courts: *Ward* v. *Goodrich.* 34 Colo. 369

(82 Pac. 701, 114 Am. St. Rep. 167, 2 L. R. A. (N. S.) 201); *Rounds Brothers* v. *McDaniel,* 133 Ky. 669, (118 S. W. 956, 134 Am. St. Rep. 482, 19 Ann. Cas. 326); *Alvey* v. *Hartwig,* 106 Md. 254 (67 Atl. 132, 14 Ann. Cas. 250, 11 L. R. A. (N. S.) 678); *Spencer* v. *Spencer,* 97 Minn. 56 (105 N. W. 483, 114 Am. St. Rep. 695, 7 Ann. Cas. 901, 2 L. R. A. (N. S.) 851); 29 Cyc. 1606; 20 R. C. L. 622). In this jurisdiction we have a statute which affirmatively declares that

"Parents shall be bound to maintain their children when poor and unable to work for themselves; * * *": Section 7054, L. O. L.

When we say that it is the legal duty of a parent to support his child, we are dealing with a duty in the abstract; but when called upon to determine whether the duty has been performed in a given case we must remember that what would be a complete performance in one case might be only a partial performance of the parental duty in another case. In other words, the obligation of the father must be measured with reference to his ability, honestly exercised, and with regard to his financial resources. If the child is able to earn its own support, in whole or in part, the father is not obliged to support his offspring in idleness, but he is bound to furnish such portion as the child cannot, all things being considered, earn by reasonable effort: *Graham* v. *Graham,* 38 Colo. 453 (88 Pac. 852, 12 Ann. Cas. 137, 8 L. R. A. (N. S.) 1270); *Matter of Ryder,* 11 Paige (N. Y.) 185 (42 Am. Dec. 109). The parent performs his duty when he provides for his child whatever is necessary for its suitable clothing and maintenance according to their situation and condition in life: *De Brauwere* v. *De Brauwere,* 203 N. Y. 460 (96 N. E. 722, 38 L. R. A. (N. S.) 508; *State* v. *Bess,* 44 Utah, 39 (137 Pac. 829); *Hedin* v. *Suburban Ry. Co.,* 26

Or. 155, 160 (37 Pac. 540). An excellent statement of
the rule in its broad outlines is found in *State* v. *Waller,* 90 Kan. 829 (136 Pac. 215, 49 L. R. A. (N. S.) 588,
595), where the court says:

"Sustenance which barely meets animal needs, which
does no more than relieve the pangs of hunger, cover
nakedness, and afford shelter from the elements, is not
support or maintenance. He is obliged to provide such
a place of abode, such furniture, such articles of food,
wearing apparel, and use, such medicines, medical attention, and nursing, such means for the education of
children, and such social protection and opportunity as
comport with the health, comfort, welfare, and normal
living of human beings according to present standards
of civilization, considering his own means, earning capacity, and station in life."

3, 4. The courts do not agree in their interpretation
of the common law as to the burden of this duty which
devolves upon parenthood. Some courts declare that
the burden rests upon the parents equally, while others
hold that the duty devolves primarily upon the father
and secondarily upon the mother: *Alvey* v. *Hartwig,*
106 Md. 254 (67 Atl. 132, 14 Ann. Cas. 250, 1 L. R. A.
(N. S.) 678); *Hunter* v. *State,* 10 Okl. Cr. 119 (134
Pac. 1134, Ann. Cas. 1916A, 612, L. R. A. 1915A, 564);
29 Cyc. 1606. Legislation has been enacted in some
states placing the burden upon the father and mother
equally. The State of Washington has a statute providing that:

"The expenses of the family and the education of
the children are chargeable upon the property of both
husband and wife, or either of them, and in relation
thereto they may be sued jointly or separately": Ballinger's Ann. Codes & St., § 4508.

And when called upon to construe that statute the
Supreme Court of that state ruled that:

"This obligation is the same after divorce as before, unless the decree of separation provides otherwise. It follows from this that the obligation of the father and mother in this state in relation to the maintenance and support of their minor children is joint and several, and not primary and secondary as at common law": *Hector* v. *Hector,* 51 Wash. 434 (99 Pac. 13, 15).

It is to be noted, however, that we have a statute exactly like the Washington enactment: Section 7039, L. O. L.; and this court has ruled that this provision of the code "was intended for. the protection of creditors of the husband and wife, and not to change the common-law rule respecting their liability as between each other concerning such matters": *Taylor.* v. *Taylor,* 54 Or. 560, 583 (103 Pac. 524, 532). It must be remembered, however, that in addition to Section 7054, L. O. L., which states that "*Parents* shall be bound to maintain their children" there is another section of the Code which declares that:

"Henceforth the rights and responsibilities of the parents, in the absence of misconduct, shall be equal, and the mother shall be as fully entitled to the custody and control of the children and their earnings as the father, and in case of the father's death, the mother shall come into as full and complete control of the children and their estate as the father does in case of the mother's death": Section 7057, L. O. L.   See *MacDonald* v. *O'Reilly,* 45 Or. 589, 593 (78 Pac. 753).

The record presented by the instant appeal does not require us to determine whether the burden of support, when considered in the abstract, rests equally upon the parents or whether it is primarily placed upon the father and secondarily upon the mother; but it is sufficient, for the purposes of the instant case, to say that, whether the decree of divorce fixed a definite sum to be paid by the defendant as maintenance for the child

or whether the decree is silent upon that subject, there is some duty resting upon the defendant. If the decree is silent upon the subject of maintenance for the child there is nevertheless, as we shall subsequently show, a duty resting upon the father. In brief, the record presents a situation where the decree either requires the father to pay a fixed amount as maintenance for the child or it is silent upon the subject; but in either event the situation is one which involves a duty resting upon the defendant. If the decree does not speak of maintenance for the boy, then the defendant owes the same duty, in the abstract, that he owed prior to the decree whether that duty is the whole or only half the burden.

Cases concerning the support of children after divorce of the parents may be divided into three classes: (1) Where the decree is silent as to both the custody and the maintenance of the child; (2) where the decree provides for the custody of the child but is silent as to its maintenance; and (3) where the decree not only provides for the custody but also requires the payment of money for the maintenance of the child. In the first class of cases, the general rule is that the obligation of the father is, after divorce, exactly the same as it was before dissolution of the marriage contract: *Spencer v. Spencer*, 97 Minn. 56 (105 N. W. 483, 114 Am. St. Rep. 695, 7 Ann. Cas. 901, 2 L. R. A. (N. S.) 851). In the second class of cases there is a difference of judicial opinion. One line of authorities proceeds upon the theory that the duty of the father to support the child and the obligation of the latter to serve the former present reciprocal rights and duties, and that therefore to award the custody of the child to the mother is to deprive the father of the child's services and hence the loss of the right to the services of the child operates

as a release from the duty to support; but a majority
of the well-considered precedents denounce and con-
demn this cold and illogical doctrine, which not only
ignores the rights and welfare of the child, but also en-
ables an unfaithful husband and unnatural father to
compel his wife to divorce him, on account of grievous
wrongs done by him, with the assurance given to him
in advance that when she does divorce him she will not
have lost the maternal instinct, but will cling to the
child, and thus enable him further to wrong her by cow-
ardly casting his burden upon her; for the great
weight of judicial authority is to the effect that a
father is not released from his obligation to support
his child by reason of the fact that the mother has
secured a divorce and been awarded the custody of the
child by a decree which makes no provision for the
child's maintenance: *Evans* v. *Evans,* 125 Tenn. 112
(140 S. W. 745, Ann. Cas. 1913C, 294); *Spencer* v.
*Spencer,* 97 Minn. 56 (105 N. W. 483, 114 Am. St. Rep.
695, 7 Ann. Cas. 901, 2 L. R. A. (N. S.) 851); *Alvey* v.
*Hartwig,* 106 Md. 254 (67 Atl. 132, 14 Ann. Cas. 250,
11 L. R. A. (N. S.) 678); *Buckminster* v. *Buckminster,*
38 Vt. 248 (88 Am. Dec. 652); *Gibson* v. *Gibson,* 18
Wash. 489 (51 Pac. 1041, 40 L. R. A. 587); 9 R. C. L.
480. See, also, *McFarlane* v. *McFarlane,* 43 Or. 477
485 (73 Pac. 203, 75 Pac. 139); and *Miller* v. *Miller,* 67
Or. 259, 367 (136 Pac. 15). The decree of divorce was
not *res adjudicata* as to the question of maintenance:
*Graham* v. *Graham,* 38 Colo. 453 (88 Pac. 852, 12 Ann.
Cas. 137, 18 L. R. A. (N. S.) 1270); *Connett* v. *Connett,*
81 Neb. 777 (116 N. W. 658); Section 514, L. O. L.;
*Henderson* v. *Henderson,* 37 Or. 141, 145 (60 Pac. 597,
61 Pac. 136, 82 Am. St. Rep. 741, 48 L. R. A. 766). If,
therefore, the record presented here does not justify the
inference that the decree requires the defendant to pay

a certain sum in installments or otherwise for the support of the boy and if in truth the decree does not provide for maintenance of the child, the defendant nevertheless owes a duty to contribute to the support of his child.   If the decree provides for both the custody and maintenance of the boy, then the instant action naturally falls in the third class of cases.   It is neither contended nor even suggested that the decree in terms releases the defendant from any obligation to contribute to the support of Wendell, and, hence, from whatever angle one may view the problem, we find the defendant accompanied with an obligation to contribute to the support of his child; and the statute says that for a failure to perform that duty the defendant may be punished.

5, 6.  This duty to support the offspring is a continuing obligation: *State* v. *Gillmore,* 88 Kan. 835 (129 Pac. 1123, 47 L. R. A. (N. S.) 217) ; *State* v. *Witham,* 70 Wis. 473 (35 N. W. 934).   Although the language of the statute is "shall fail or neglect to support," still it is not necessary for the state to prove that the father has completely failed, but, even though some support has been furnished, the crime is nevertheless proved by showing that the parent has failed to provide adequate support.   The statute is violated not only where there is a complete failure to support, but also where there is a partial failure: *Dempsey* v. *State,* 108 Ark. 76 (157 S. W. 734).

7, 8.   A wicked intent is not an essential element of the crime of failure to support (36 L. R. A. (N. S.) 633, note, 8 R. C. L. 309) ; but as ruled in *Dempsey* v. *State,* 108 Ark. 76 (157 S. W. 734), where a statute substantially like ours was considered, the failure spoken of in the act means "a willful or negligent failure to provide, and not mere failure on account of inability."

The defendant is not required to do the impossible (*Poole* v. *People,* 24 Colo. 510 (52 Pac. 1025, 65 Am. St. Rep. 245; 8 R. C. L. 309); but to employ language approved in *State* v. *McPherson,* 72 Wash. 371 (130 Pac. 481, Ann. Cas. 1914D, 587), it is the duty of the father "to do the best he can" to support his child "in the manner suitable to his station and circumstances."

To escape the penalty of the statute, the failure must be "without just or sufficient cause." In 4 Words and Phrases, 3895, it is said that:

"The word 'just' is derived from the Latin 'justus,' which is from the Latin 'jus,' which means a right, and more technically a legal right—a law."

The expressions "just cause" and "sufficient cause" as used in the statute now under discussion mean legal cause or lawful cause; and hence a failure to support a child is without "just and sufficient cause," unless such failure can be said to be the result of a legal or lawful cause: *State* v. *Bess,* 44 Utah, 39 (137 Pac. 829); *State* v. *Baker,* 112 La. 801 (36 South. 703); *State* v. *Dvoracek,* 140 Iowa, 266 (118 N. W. 399). See, also, *Bregman* v. *Kress* (81 N. Y. Supp. 1072, 83 App. Div. 1); *State* v. *Duluth,* 53 Minn. 238 (55 N. W. 118, 39 Am. St. Rep. 595); *School District* v. *Thompson,* 5 Minn. 280 (Gil. 221); *Roseburg Ry. Co.* v. *Nosler,* 37 Or. 299, 303 (60 Pac. 904); 24 Cyc. 381; 37 Cyc. 516.

9, 10. The fact that the wife has means of her own is not of itself a defense to an indictment against the father: *Poole* v. *People,* 24 Colo. 510 (52 Pac. 1025, 65 Am. St. Rep. 245). Because of the peculiar language found in the statutes of a very few states it has been held that support voluntarily furnished by a third person, or by one parent, relieves the other parent from criminal liability for a failure to contribute to the sup-

port of the child: *Baldwin* v. *State,* 118 Ga. 328 (45 S. E. 399; *Williams* v. *State,* 126 Ga. 637 (55 S. E. 480); *State* v. *Thornton,* 232 Mo. 298 (134 S. W. 519, 32 L. R. A. (N. S.) 841); but according to the great weight of judicial opinion and according to what we believe is the plain intent of our statute, the fact that the mother alone or together with other persons furnished all the support needed for the child does not constitute just or sufficient cause for any failure by the father: *Hunter* v. *State,* 10 Okl. Cr. 119 (134 Pac. 1134, Ann. Cas. 9116A, 612, L. R. A. 1915A, 564); *State* v. *Bess,* 44 Utah, 39 (137 Pac. 829); *State* v. *Waller,* 90 Kan. 829 (136 Pac. 215, 49 L. R. A. (N. S.) 588); 20 R. C. L. 623. The remarriage of the mother does not of itself excuse any failure of the defendant, for the law does not impose upon the stepfather the duty of supporting the child, in the absence of a showing that the stepfather is standing *in loco parentis: Gerber* v. *Bauerline,* 17 Or. 115, 117 (19 Pac. 849); *Wilson's Guardianship,* 40 Or. 353, 358 (68 Pac. 393, 69 Pac. 439); *In re Harris,* 16 Ariz. 1 (140 Pac. 825, Ann. Cas. 1916A, 1175); 13 R. C. L. 1189; 20 R. C. L. 594; 21 Cyc. 1152.

11, 12. As already stated, the defendant offered evidence showing, as he claims, that his earnings were not even sufficient adequately to support himself and his present wife and he requested the court to instruct the jury that it was his duty to support his wife, and that if he was unable to do any more than to support himself and wife, it would be a just and sufficient cause for his failure to support the child while living in another home. The prosecution took the opposite view and insisted that the fact of the second marriage was immaterial; and the State also contended that the jury was not entitled to consider any evidence concerning the ability of the defendant's present wife to work or to consider

his obligations to her in connection with the question of
"just or sufficient cause." The position taken by the
plaintiff and the view entertained by the court are il-
lustrated by what occurred when the witness Mrs.
Langford, the present wife of the defendant, was being
interrogated:

"Q. Have you been able physically to render any as-
sistance?

"A. I am not able physically to make my own living,
no, sir, I am not.

"Q. What is the matter with you, Mrs. Langford?

"A. Two years ago this coming—

"Mr. Fulton: Well, I object to this. It comes down
to this proposition, as I understand it, now, whether a
man can leave his child to starve in order to afford an-
other wife. If that is the law, all right—

"The Court: Well, I don't think that is any excuse
for failure to support the child."

Moreover, the court instructed the jury that the first
duty of a father is to support his children, and that
while he has such children requiring his support, "he
has no legal right to voluntarily place himself in such a
position that he cannot perform this duty for them";
and that, therefore, the fact that the defendant has as-
sumed the burden of supporting a wife would not be a
defense and the jury "should not take that fact into
consideration in determining the guilt or innocence of
the defendant."

The marriage of the defendant was lawful. No law
of man, statutory or otherwise, prohibited the defend-
ant from again marrying; but upon the contrary the
law recognizes his right to remarry, provided only such
remarriage occurs after the expiration of a certain
period: Section 515, L. O. L., as amended by Chapter
236, Laws 1913. Moreover, when the defendant remar-
ried, the act of 1915 was in effect and he was one of the
persons embraced by the proviso of that statute. The

fact that the defendant was the father of a living child to whom he owed the duty to furnish support did not operate as a legal obstacle to remarriage. The moment the defendant remarried he incurred an obligation to support his wife and a failure, without ''just or sufficient cause,'' to fulfill that obligation constitutes a crime for which he can be punished. The duty now resting upon the defendant to support the present wife is no different from the duty that rested upon him to support his former wife during the period of their married life from 1902 to 1911. The defendant cannot, of course, be deprived of support for himself, because to do so would be to deprive him of the ability to support either himself or his wife or child. If Wendell now lived in the home of the defendant, the latter's obligation to support his child and his present wife would be exactly the same as was his obligation to support the child and its mother when both of them lived with him prior to the divorce. While it is true that the duty of the defendant to support his child continues after divorce, even though the mother has been awarded the custody of the child, it is also true that in the enforcement of this duty the court will consider all the circumstances, and, as stated in *Buckminster* v. *Buckminster,* 38 Vt. 248, 252 (88 Am. Dec. 652), will not ''disregard the rights of the husband and his new relations and duties to others.'' The defendant not only has a right to support himself and wife and maintain his home, but it is also his duty to do so. If the child lived in the home of the father, the earnings would naturally be shared in common by the child, the father and the wife, but the difficult problem arises out of the fact that the child lives in another home, coupled with the circumstance that the defendant contends that his earnings are not sufficient to maintain his own home. The defendant must ''do the best he can'' to

perform his whole duty to his wife and to his child; but if after doing "the best he can" his earnings are insufficient to support himself and wife that fact furnishes "just or sufficient cause" within the meaning of the statute. It must be remembered that this is a criminal action and that it must be proved beyond a reasonable doubt that the defendant willfully failed and neglected without just or sufficient cause to support his child; 21 Cyc. 1614; *State* v. *Bess,* 44 Utah, 39 (137 Pac. 829); but if this were a civil proceeding to collect unpaid alimony or unpaid maintenance, the element of willful failure and that of "just or sufficient cause" are not essential: *State* v. *Bess,* 44 Utah, 39 (137 Pac. 829, 832). The case of *State* v. *Bess* is in its main features much like the instant action. The parents had six children—four girls and two boys. A decree of divorce gave the mother the custody of the four girls and awarded her $40 per month as alimony, while the father was granted the custody of the two boys. The father was convicted of failure to support three of the girls. There was testimony to the effect that his earnings were not sufficient to support himself and two boys. The court reversed the judgment with directions to dismiss the action, after saying in the course of the opinion:

"We think the evidence wholly fails to show willful neglect on his part as contemplated by the statute to provide for and support the children mentioned in the information. True, evidence was introduced showing that he failed to contribute anything for their support; but the evidence also shows that the current and necessary expenses of himself and two boys far exceeded his earnings during the time covered by the information, hence his neglect in that regard was not without "just excuse."

We conclude, therefore, that the instruction given to the jury was erroneous; and we also conclude that the

defendant was entitled to have his present wife tell about her physical condition, for the reason that her ability to work necessarily affects his duty to support her.

13. The testimony of F. M. De Neffe was competent and so was the testimony of Mrs. J. T. Jeffries when she told the jury that she had supported the child since the divorce and that the defendant had not, "contributed any sum whatever." The court explained to the jury that the defendant would not be liable for any failure or neglect to support, "occurring prior to the 21st day of May, 1917, or since the date of the indictment." One of the main issues involved was whether the defendant had failed after doing the best he could under the circumstances, or whether he had simply neglected or willfully failed to provide support, and although he could not have been lawfully convicted of a failure occurring while the act of 1915 was in effect, it was nevertheless proper to inform the jury about his conduct prior to May 20, 1917, so that the jury could better determine the reason for his failure from "May 21st" to June 19th, the date of the indictment. If for five years he willfully failed to support, the jury had a right to consider it; and if, as testified by F. M. De Neffe, the defendant absolutely refused to aid in supporting his son, the jury had a right to know it. This evidence does not transgress the rule prohibiting evidence of other crimes. Indeed, the defendant's failure to support during the time the act of 1915 was in effect was not punishable because he was in the excepted class. The identical question presented by the testimony of F. M. De Neffe is decided adversely to the defendant in *Commonwealth* v. *Burlington,* 136 Mass. 435. See, also, *State* v. *Ransell,* 41 Conn. 433; *Firmeis* v. *State,*

61 Wis. 140 (20 N. W. 663); *State* v. *Gillmore,* 88 Kan. 835 (129 Pac. 1123, 47 L. R. A. (N. S.) 217).

14. Inasmuch as the cause must be remanded for a new trial it is fitting to observe that the cross-examination found on page 16 of the transcript was plainly designed for no purpose other than to humiliate the witness; and since the questions referred to were not competent for any purpose in this action, the court may with propriety act on its own initiative and, without waiting for an objection from opposing counsel, interrupt any attempt to repeat the questions.

It will not be necessary specifically to notice any other assignment of error relating to the admission or rejection of evidence or to instructions given or refused by the court, for the reason that the foregoing discussion sufficiently indicates our views upon the questions involved in those assignments of error. We take it for granted that the trial court will compel a strict observance of all the rules governing trials and we also assume that upon a retrial there will be a mutual disposition upon the part of counsel to refrain from indulging in provocative or retaliatory remarks which give off much heat, but afford no light; and since we do not anticipate a repetition of certain statements found in the record we conclude that we are justified in believing that it is quite unnecessary to recite or discuss any of such statements.

The judgment is reversed and the cause remanded for a new trial.          REVERSED AND REMANDED.