**2015 UT App 24**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
DEVIN KEITH MCAUSLAND,
Defendant and Appellant.

Memorandum Decision
No. 20131067-CA
Filed February 5, 2015

Third District Court, Salt Lake Department
The Honorable Elizabeth A. Hruby-Mills
No. 121910389

Joanna E. Landau and Samuel J. Hanseen,
Attorneys for Appellant

Sean D. Reyes and Kris C. Leonard, Attorneys
for Appellee

JUDGE JAMES Z. DAVIS authored this Memorandum Decision, in
which JUDGES J. FREDERIC VOROS JR. and STEPHEN L. ROTH
concurred.

DAVIS, Judge:

¶1     Defendant Devin Keith McAusland appeals his convictions
of two counts of criminal nonsupport. McAusland argues on
appeal that there was insufficient evidence to prove a necessary
element of the charges against him, namely, that his child (Child)
was "in needy circumstances" or "would be in needy circumstances
but for support received from" another outside source (the
neediness element). *See* Utah Code Ann. § 76-7-201(1) (LexisNexis

2012). We conclude that the jury's verdict is supported by sufficient evidence and therefore affirm McAusland's convictions.[1]

¶2    Criminal nonsupport occurs when a person "having a spouse, a child, or children under the age of 18 years" "knowingly fails to provide for the support of the spouse, child, or children when any one of them: (a) is in needy circumstances; or (b) would be in needy circumstances but for support received from a source other than the defendant or paid on the defendant's behalf." *Id*. We will review "the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict," and we will not reverse a jury's verdict unless the evidence is so "sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *State v. Barlow*, 851 P.2d 1191, 1193 (Utah Ct. App. 1993) (citations and internal quotation marks omitted) (reviewing a challenge to a criminal nonsupport conviction). Additionally, "[t]he existence of contradictory evidence or of conflicting inferences does not warrant disturbing the jury's verdict." *State v. Boyd*, 2001 UT 30, ¶ 14, 25 P.3d 985 (alteration in original) (citation and internal quotation marks omitted).

¶3    McAusland's convictions stem from two periods of nonsupport occurring between 2006 and 2012, during which he made child support payments totaling $800. His required monthly child support payment was $474 plus half of Child's daycare and medical expenses. McAusland argues that the only evidence related to Child's neediness during this six-year span came from the testimony given by Child's mother (Mother). He describes Mother's testimony as consisting entirely of "bald assertions"

---

1. McAusland asks that we review his appeal under a plain error analysis if we determine that the issues he argues on appeal are not properly preserved. Because we deem his arguments properly preserved, we review them under ordinary principles of appellate law. *See infra* ¶ 2.

unsupported by the record and argues that Mother's testimony does not support a finding of need.[2]

¶4    Mother testified that she received various forms of government assistance due to her low income between 2006 and 2012, including Medicaid coverage for Child, food stamps, fee waivers for Child's schooling, and housing assistance. She also testified that, during this time, she and Child lived together in an apartment in West Jordan, in the home of her second child's father, and in her parents' home. In addition, Mother received $3,618 in cash assistance from the State during the first charged period of nonsupport and $996 during the second charged period. Mother noted that although Child had no special needs or extraordinary expenses during the charged periods, she had to keep expenses low and did not "have a lot of money to do anything." She testified that Child's extracurricular activities were similarly low cost during that time and consisted primarily of playing with friends and playing softball. Mother indicated that she used babysitters and daycare services while Child was younger, but she could not recall the cost or duration of those services. Mother indicated that she could not support Child on her own during those six years, stating, "There's no way I could do it on my own. I still can't. We've moved into my mom's, and my dad is the one that's helping me. That's who helps pay child support."

¶5    McAusland highlights Mother's testimony that she was able to use babysitters and daycare services when Child was younger.

---

2. McAusland also argues that the State impermissibly sought to satisfy its burden of proof by relying on the statutory presumption that a child needs the support of both parents. *See* Utah Code Ann. § 78B-12-105(1) (LexisNexis 2012) ("Every child is presumed to be in need of the support of the child's mother and father. Every mother and father shall support their children."). Because we determine that there is sufficient evidence in the record to support the jury's verdict, we need not address this argument.

He argues that a lack of need is demonstrated by the fact that Mother was able to access this sort of "outside help" without his financial assistance. Had needy circumstances truly existed, he asserts, Mother should have been able to prove the duration and expense of the various forms of outside help she had utilized throughout the contested six-year span. Similarly, McAusland suggests that Child's Medicaid coverage relieved him of his burden to share in Child's health insurance expenses during the coverage period.

¶6      We are not persuaded. Though Mother somehow paid for babysitting and daycare services without McAusland's assistance, the evidence that Mother received cash assistance goes directly toward a finding of neediness, particularly when viewed in conjunction with Mother's testimony about her income and having received food, housing, and tuition waivers from the State and financial and housing assistance from her family. As the State frames it, the cash assistance award is essentially tantamount to the State "step[ping] in to meet [McAusland's] obligation" and paying "support on [McAusland's] behalf to the extent necessary to prevent [Child] from being in needy circumstances." Furthermore, the jury's finding in support of the neediness element is not precluded by the fact that Mother used daycare and babysitting services without McAusland's financial assistance or that Child received Medicaid coverage. Nor is the jury's finding of neediness precluded by evidence that Child's needs were being met as a result of Mother's receipt of housing, food, cash, and school fee assistance from the State and housing and financial assistance from Mother's family. Indeed, this logic belies the language of the statute defining neediness in terms of whether the child is actually in needy circumstances *or* would be in needy circumstances but for the assistance of third parties. *See* Utah Code Ann. § 76-7-201(1) (LexisNexis 2012); *see also State v. Bess*, 137 P. 829, 831 (Utah 1913) ("The fact that the destitution and suffering of the children were relieved by the acts of kind and charitable friends does not . . . exculpate the defendant for his dereliction . . . ."); *cf. State v. Nelson*, 2005 UT App 526U, para. 7 (concluding that a mother's testimony

"that she struggled to buy food and clothing for her children and that she had to borrow or was given financial assistance from her friends, parents, and church" constituted sufficient evidence of neediness); *State v. Houghton*, 2002 UT App 156U, para. 2 (considering evidence that a defendant paid only $1,227 in child support over a seven-year period to be indisputable proof that the child "would be in needy circumstances but for support from a source other than [the defendant]").

¶7      Next, McAusland argues that Mother's two requests that the Office of Recovery Services (ORS) close its case demonstrate a lack of need. He places particular significance on the fact that in one of her requests, Mother instructed ORS to "keep the arrears," which at that time were in excess of $16,000. As McAusland contends, Mother's willingness to forgo the arrears and her desire to close the ORS case prove that Child was not "in needy circumstances."

¶8      We disagree. The status of the parties' case with ORS is unrelated to whether Child is in needy circumstances and has no bearing on McAusland's responsibility to continue paying child support. The posture of the case with ORS affects only ORS's role in enforcing and collecting McAusland's child support obligation. Moreover, McAusland's assertion that Mother's request to close the ORS case signified a lack of need is unconvincing in light of Mother's testimony that she made the request as a gesture of goodwill meant to "get [McAusland's] attention" and prompt him into action. McAusland confirmed as much at trial, testifying that Mother contacted him directly, offering to drop the case with ORS and "get out of the court system and work this out" together.

¶9      Similarly, the significance of Mother's statement that ORS "keep the arrears" is not necessarily indicative of a lack of need. Mother reiterated that her willingness to forgo the arrears was motivated by her hope that the gesture would cajole McAusland into cooperating and paying his child support obligations without issue thenceforth. Further, because Mother had received cash assistance from the State, the arrears she was willing to forgo were

not, at least not entirely, funds to which she retained an entitlement; in return for providing cash assistance, the State took an assignment of McAusland's child support debt equal to the amount of cash assistance it had given Mother.

¶10    In light of the foregoing, we conclude that the jury was presented with sufficient evidence to support a finding of neediness. *See State v. Holgate,* 2000 UT 74, ¶ 18, 10 P.3d 346. Accordingly, we affirm McAusland's convictions.

———————